# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CYNTHIA ILENE FLEMING,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No. 323795
Wayne Circuit Court
LC No. 13-001653-FC

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right her bench trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). Defendant was sentenced to 13 ½ to 24 years' imprisonment for the second-degree murder conviction, to be served consecutively to the mandatory two-year term of imprisonment for the felony-firearm conviction. We affirm defendant's convictions and sentence, but remand for the limited purpose of correcting the presentence investigative report (PSIR) to reflect that defendant was convicted following a bench trial and that she did not have any outstanding warrants at the time of sentencing.

## I. OFFENSE VARIABLE 5

In the brief submitted by appellant counsel, defendant argues that the trial court erred in scoring 15 points under offense variable (OV) 5.[1] We disagree.

---

[1] We review for clear error the trial court's findings of fact, and such findings require support by a preponderance of the record evidence. *People v Steanhouse*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 19. The application of the facts to the law, namely whether the facts are sufficient to meet the scoring conditions set forth in the pertinent statute, presents a question of law that this Court reviews de novo. *Id*. This Court will also review de novo the trial court's interpretation of the sentencing guidelines. *Id*. A trial court's findings of fact are clearly erroneous where, after a review of the record as a whole, "this Court is left with a definite and firm conviction that a mistake has been made." *People v Givans*, 227 Mich App 113, 119; 575 NW2d 84 (1997) (citation omitted).

OV 5 addresses psychological injury to a member of a victim's family. MCL 777.35. A trial court must assess 15 points if a "[s]erious psychological injury requiring professional treatment occurred" to a member of the victim's family. MCL 777.35(1)(a). The court must "[s]core 15 points if the serious psychological injury to the victim's family may require professional treatment." MCL 777.35(2). "In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.35(2).

Here, the victim's daughter gave a statement at sentencing. She explained that after her mother's death, the victim reached out to her and provided emotional support. She stated that although she was in counseling before the victim's death, she had to increase her counseling to three days a week because she could not get out of her head what she thought the victim's thoughts must have been when he died. In *People v Steanhouse*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 19-20, we affirmed a trial court's assessment of 15 points for OV 5 where the victim's parents were present in the home when their son's throat was slashed, and they discovered the crime was committed by someone they believed was a close friend of their son. The *Steanhouse* Court noted "the trial court's opportunity to observe the demeanor of [the victim's] parents during their testimony" supported the trial court's finding regarding their psychological injuries. *Id*. at ___; slip op at 20. Here, the trial court was in the unique position to hear the daughter's testimony both at trial and at the sentencing hearing, and so the court was able to observe her demeanor and make a credibility determination. *Id*. Given the record, the trial court's finding that the victim's daughter suffered serious psychological harm requiring a score of 15 points under OV 5 was supported by a preponderance of the evidence.[2]

## II. STANDARD 4 BRIEF

Defendant next raises several issues in a brief submitted pursuant to Administrative Order No. 2004-6, Standard 4. After review, we conclude that the issues raised in defendant's Standard 4 brief do not warrant reversal.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

First, defendant argues that defense counsel was ineffective for a number of reasons. Because no *Ginther*[3] hearing was conducted, "our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that trial defense counsel's conduct did not meet an objective standard of reasonableness, and that, but for defense counsel's error, there is a reasonable probability that the result of the trial would have been different. *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014), quoting

---

[2] Defendant has not raised a challenge to the scoring of OV 5 based on the court's potential use of judicial factfinding and we decline to raise it sua sponte.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). There is a strong presumption that defense counsel's actions are pursuant to sound trial strategy. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). We will not interfere with defense counsel's judgment regarding matters of trial strategy or second-guess defense counsel's decisions with the benefit of hindsight. *Id*. at 242-243. Moreover, a criminal defendant must establish the factual predicate for his or her claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that defense counsel was ineffective for not retaining and presenting an expert witness on battered woman syndrome.

In *People v Christel*, 449 Mich 578, 591; 537 NW2d 194 (1995), the Michigan Supreme Court held that expert testimony concerning battered woman syndrome is admissible when relevant to an issue before the factfinder. The Court limited such testimony to a description of "the generalities or characteristics of the syndrome" and its possible relationship to "a specific behavior brought out at trial." *Id*. (quotation omitted). The Court also barred expert opinion testimony on whether a person was, in fact, a battered woman. *Id*.

Defense counsel did present evidence that defendant had endured prior physical abuse from the victim. The victim's daughter and one of the victim's neighbors testified about defendant and the victim's volatile relationship. Defense counsel also extensively questioned a police detective about prior domestic dispute calls originating from defendant and the victim's apartment. While it is conceivable that expert testimony may have bolstered the defense, defendant has failed to provide us with a basis upon which we could reach this conclusion, let alone to determine whether it affected the outcome of the case. Defendant has not presented an affidavit or any other material to indicate that such an expert exists and what the substance of his or her testimony would have been. Defendant filed a pro per motion to remand for a *Ginther* hearing, which also contained no such material. On August 14, 2015, we denied her motion without prejudice stating that we "will consider another motion to remand if it is filed by defendant-appellant's counsel and is supported by affidavits to show the testimony that could have been presented at trial and is available to place on the record on remand."[4] Such material has not been submitted. Accordingly, we cannot conclude that defense counsel's failure to call an expert as to battered woman syndrome was ineffective or that it was reasonably likely to be outcome determinative. *Lopez*, 305 Mich App at 694.

Defendant next argues that defense counsel was ineffective because he did not communicate with her and because she was unaware of the trial strategy, the anticipated defenses, or the evidence that would be admitted at trial. In support of her claim, defendant provided letters that she sent to the trial court and to defense counsel. There is nothing on the record to suggest that defendant sent the letters to the trial court before trial. Although one of the letters attached to defendant's Standard 4 brief is dated before the trial, her second appended letter is dated after proofs were closed, and it expressly states that the other letter was not

---

[4] *People v Fleming*, unpublished order of the Court of Appeals, entered August 14, 2015 (Docket No. 323795).

previously sent to the trial court. The letter to defense counsel, which is dated June 20, 2014 (before trial), does indicate that defendant had some confusion about what defense was going to be presented at trial. Copies of the letters are not included in the lower court file, nor is there anything on the letters, such as a court stamp, to indicate that they were actually received by the trial court. Moreover, given that defense counsel appears to have presented the defense that defendant wanted him to present at trial, we are not persuaded that the outcome of the trial would have been different had defense counsel communicated with defendant more before trial. Accordingly, defendant's claim of ineffective assistance is without merit. *Id*.

Defendant next argues that defense counsel was ineffective because he did not object to hearsay statements related by a police officer and a firefighter. The police officer testified that while defendant was in his squad car she stated that she hoped the victim died. This statement is not hearsay because it is a party-opponent admission under MRE 801(d)(2) and is, by definition, not hearsay. The firefighter testified that he asked the victim if defendant shot him and the victim responded by nodding. This nonverbal response is an out of court statement introduced for the truth of the matter asserted, so it is hearsay. MRE 801(c). However, it was admissible as a statement made under belief of impending death. MRE 804(b)(2). Because both statements were admissible, defense counsel was not ineffective for failing to object. *People v Collins*, 298 Mich App 458, 470; 828 NW2d 392 (2012) (stating that defense counsel is not ineffective for failing to raise a meritless objection).

Admission of those statements did not deprive defendant of her right to confront the witnesses against her. Defendant's own statements to the police do not implicate the Confrontation Clause. See *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011) (recognizing that the United States and Michigan constitutions provide a criminal defendant with the right to confront the *witnesses* against him or her). And the victim's nonverbal statement to the firefighter identifying defendant as his assailant is nontestimonial. See *People v Taylor*, 275 Mich App 177, 182; 737 NW2d 790 (2007) (holding that the victim's statements identifying his assailant as he was dying of his gunshot wounds were nontestimonial under *Crawford v Washington*, 541 US 36, 68; 124 S Ct 1354; 158 L Ed 2d 177 (2004) and were admissible pursuant to MRE 804(b)(2)). Accordingly, because the Confrontation Clause was not violated, defense counsel was not ineffective for failing to object to the testimony on grounds that it violated the Confrontation Clause. *Collins*, 298 Mich App at 470.

Defendant next argues that defense counsel was ineffective for failing to have an expert witness testify at her sentencing hearing about mitigating factors that bore on the trial court's sentencing decision. Defendant acknowledges that while preparing for sentencing, defense counsel did consult with a psychologist to determine whether there was a reason for a downward departure. Defense counsel, however, ultimately decided not to present an expert in support of his request for a downward departure. Instead, he prepared a memorandum presenting his argument and then orally argued in favor of a downward departure. On appeal, defendant argues that if a psychologist were contacted mitigating factors may have been expounded upon by the expert. Defendant suggests that the mitigating factors might have included the fact she allegedly had post-traumatic stress disorder (PTSD). However, besides defendant's unsupported assertion, there is nothing in the record indicating what a psychologist would have actually stated. Accordingly, defendant has not established the factual predicate for her claim, *Hoag*, 460 Mich at 6, and has not overcome the presumption that defense counsel was acting pursuant to a valid

strategy when he decided not to present a psychologist at sentencing. *Unger*, 278 Mich App at 242.

Defendant also argues that defense counsel was ineffective for failing to suppress her statements to the police officer in the squad car and her statements during the booking process on the grounds that the statements were made when she had not been advised of her *Miranda*[5] rights. However, *Miranda* warnings are not required unless the accused is subject to a custodial interrogation. See *People v Hill*, 429 Mich 382, 397-399; 415 NW2d 193 (1987). Here, the police officer testified that defendant was talking to herself in the back of the squad car when she made the statement that she hoped the victim died and that he should not have lost all their money at the casino. The officer testified that defendant was not being questioned when she made the statement. Further, during the booking procedure, a booking officer asked defendant general identification questions, but did not question defendant about the shooting. The officer testified that defendant made several unsolicited statements during the booking procedure that pertained to the shooting, including statements that the victim grabbed the gun and attempted to shoot himself and statements that the victim had asked defendant to shoot him. Because none of the challenged statements was solicited during a custodial interrogation, we conclude that defense counsel was not ineffective for failing to suppress the statements.

Defendant next argues that defense counsel was ineffective for failing to call her mother, two neighbors, and the victim's cousin. Defendant asserts that her mother would have corroborated her testimony that the victim was angry about various issues. Defendant asserts that one neighbor would have testified that on the day of the shooting, (1) the victim was angry about various issues, (2) defendant seemed shaky and "out of it" when approached by the victim, and (3) that defendant did not make sense when she was talking to the neighbor. Defendant asserts that another neighbor would have testified that she had witnessed the victim abusing defendant on multiple occasions and that she did not visit defendant and the victim because she was sick of seeing the victim beat defendant.[6] Finally, defendant asserts that the victim's cousin could have testified that the victim never told him that defendant shot at him on a previous occasion. Defendant argues that the testimony from these witnesses would have impacted her credibility at trial. However, there is nothing in the record to indicate that the potential witnesses would have testified in the manner that defendant asserts they would have testified, and defendant has not attached any affidavits from the potential witnesses. Thus, defendant has failed to supply the factual predicate for her claim. *Hoag*, 460 Mich at 6. Moreover, assuming *arguendo* that the witnesses would have testified as indicated by defendant and that defense counsel was ineffective for failing to present their testimony, defendant has nevertheless failed to establish that, but for the alleged error, the outcome of the trial would have been different. *Lopez*, 305 Mich App at 694. Defense counsel presented testimony supporting defendant's testimony that the victim was angry with her and that he had previously abused her, including presenting a personal protection order that defendant had obtained against the victim following one incident of abuse. The trial court never expressed any doubt with regard to that testimony;

---

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[6] Defendant concedes that defense counsel unsuccessfully attempted to locate this neighbor.

-5-

however, the court found that defendant's testimony lacked credibility, in main part because she testified that the victim was shot twice in the living room, but there was no blood actually found in the living room. The court also noted that defendant's stories about what occurred during the shooting were inconsistent. On these facts, defense counsel was not ineffective. *Id*.

Defendant next argues that defense counsel was ineffective for failing to request a continuance during the trial when he was feeling ill. Defendant asserts, without support, that five days after the trial, defense counsel told her he did not object to "certain witnesses" on July 17, 2014, the last day of trial, because he was not feeling well. It is not clear which witnesses defense counsel apparently failed to object to because of illness. The record shows that defendant was the only witness that testified on July 17, 2014. Moreover, there is nothing on the record to indicate that defense counsel was, in fact, ill, or that, if he was ill, it affected his ability to effectively represent defendant. Given that defendant has not identified the witnesses that apparently should have been objected to or what portions of their testimony was objectionable, defendant has not established the factual predicate for her claim, *Hoag*, 460 Mich at 6, and so relief is not warranted on this claim.

Finally, defendant argues that the cumulative effect of defense counsel's errors mandates reversal. However, given that we have not found any errors, we decline to reverse on that basis.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support her conviction for second-degree murder.[7] She asserts that there was insufficient evidence to show malice, that the prosecution failed to negate her claim of self-defense, and that the record evidence only supported a manslaughter conviction. We disagree.

"The elements of second-degree murder consist of (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (quotation omitted). "The term 'malice' has been defined as the intent to kill, the intent to do cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 9-10 (quotation omitted).

There was sufficient evidence to establish that defendant acted with malice when she shot the victim. Although defendant presents her trial testimony as support for a finding that she did not act with malice, we must view the evidence in the light most favorable to the prosecution.

---

[7] Challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). Due process requires, that when the evidence is viewed in the light most favorable to the prosecution, a reasonable trier of fact could find each element of the crime established beyond a reasonable doubt. *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). It is the trier of fact's role to judge credibility and weigh the evidence. *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011).

*People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). Here, defendant called 911 after the shooting and stated that she had shot the victim. Then, when she was placed in a police car, she stated that she hoped defendant died and that he should not have lost all of their money at the casino. Further, during the booking procedure at the police station, defendant also made unsolicited statements about how the victim told her to shoot him. The record also established that defendant was shot twice, once in the back and once in his left leg. Viewed in the light most favorable the prosecution, the evidence supports a finding that when defendant shot the victim she intended to kill him and, in fact, wanted him to die.[8]

Defendant also argues that the prosecution failed to disprove that she acted in self-defense. Whether a defendant acted in self-defense is an issue reserved to the trier of fact. *People v Prather*, 121 Mich App 324, 330; 328 NW2d 556 (1982). In *People v Roper*, 286 Mich App 77, 86; 777 NW2d 483 (2009), this Court set forth the relevant law on the defense of self-defense:

> "In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin*, 434 Mich 482, 502; 456 NW2d 10 (1990); see also MCL 780.972(1)(a) (providing that a person may use deadly force against another if the person "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual"). "Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993).

At trial, defendant testified that she came out of the bedroom and saw her gun on a TV table. She stated that she had left her gun in her jacket and that it had not been in the "firing" position. She testified that when she saw the gun she became concerned and started to ask the victim about it but that before finishing her question, she and the victim moved towards the gun. She testified the victim reached the gun first and that she grabbed his hand and a mutual struggle ensued during which the victim pulled her hair and swore at her. Defendant stated that the gun went off twice during the struggle at which point the victim accused her of shooting him in the leg and she responded he had shot himself in the leg. Whether or not to accept this version of events was for the factfinder, *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011), and in rendering its verdict, the trial court stated that it found defendant's testimony not credible. Moreover, the forensic evidence strongly indicated that the shots were fired from a distance of feet, not inches and were unlikely to have been fired during a close struggle. We conclude that the trial court did not err in finding that the prosecutor had proven beyond a reasonable doubt that defendant was not acting in self-defense.

---

[8] Defendant also argues that, at best, she should have only been convicted of manslaughter. However, given our conclusion that sufficient evidence existed to support her conviction for second-degree murder, we decline to address this argument further.

## C.  DENIAL OF REQUEST TO REOPEN THE PROOFS

Defendant argues that the trial court erred when it refused to reopen the proofs several days after closing arguments were finished.  Defense counsel explained that he wanted to reopen the proofs to provide a brief demonstration to the trial court to show that defendant's version of events could have led to the injuries sustained by the victim.  Defendant asserts that the trial court's refusal deprived her of her constitutional right to a fair trial and to present a defense.[9]

"Relevant in ruling on a motion to reopen proofs is whether any undue advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party."  *People v Herndon*, 246 Mich App 371, 420; 633 NW2d 376 (2001) (quotation omitted).  When we review a trial court's decision on a motion to reopen the proofs, we consider several factors, including: "whether conditions have changed or undue advantage would result, whether newly discovered and material evidence is sought to be admitted, whether surprise would result, and the timing of the motion during the trial."  *People v Moore*, 164 Mich App 378, 383; 417 NW2d 508 (1987), mod on other grounds 433 Mich 851 (1989).

Here, the motion to reopen the proofs was heard over a week after the trial court heard closing arguments.  The proposed evidence was not newly discovered and was, in fact, cumulative to defendant's trial testimony.  Accordingly, on these facts, the trial court did not abuse its discretion in denying defendant's motion to reopen the proofs.  *Id*. at 384 (concluding the trial court did not abuse its discretion in not reopening the proofs to allow the defendant to testify where the motion to reopen the proofs was filed after closing arguments and there was no newly discovered evidence or change in circumstances).  Moreover, the trial court's denial did not deprive defendant of her right to present a defense because she was, in fact, allowed to present her defense through her testimony, which was then argued by defense counsel during closing argument.

## D.  ACCURACY OF SENTENCING INFORMATION

Defendant also argues that she was sentenced on the basis of inaccurate information.  To the extent that defendant is referring to the court's scoring decision on OV 5, there was sufficient evidence to support the court's scoring decision.  Thus, defendant was not sentenced on inaccurate information with regard to OV 5.

## E.  DOWNWARD DEPARTURE

---

[9] This Court reviews for an abuse of discretion the trial court's determination concerning the reopening of the proofs.  *People v Herndon*, 246 Mich App 371, 419; 633 NW2d 376 (2001).  "An abuse of discretion occurs when a court chooses an outcome that falls outside the range of reasonable and principled outcomes."  *People v White*, 307 Mich App 425, 429; 862 NW2d 1 (2014).  Unpreserved claims of constitutional error are reviewed for plain error affecting defendant's substantial rights.  *People v Costner*, 309 Mich App 220, 232; 870 NW2d 582 (2015).

Defendant next argues that the trial court abused its discretion when it failed to depart downward from the sentencing guidelines range. Defendant asserts that a downward sentence was required because (1) she appeared intoxicated during the booking procedure, (2) she was 58 years old, (3) she had hypertension and clinical depression, (4) she had previously been abused by the victim, and (5) she did not have a prior criminal record. Regardless of whether those circumstances would have supported a downward departure, defendant cannot establish that the trial court's decision to sentence within the guidelines range was an abuse of discretion. The trial court stated that, after considering the trial testimony and the arguments presented in favor of a downward departure, it did not think a downward departure was warranted and it did not think that a sentence at the top of the guidelines was warranted. The guidelines range was 162 to 270 months. The court sentenced defendant to a minimum of 162 months, a sentence at the bottom of the guidelines range. Given the facts of this case, the court's decision was not an abuse of discretion.

## F. ACCURACY OF THE PRESENTENCE INVESTIGATIVE REPORT

Finally, defendant argues that the PSIR was incorrect. She asserts that it incorrectly stated that she had an outstanding warrant at the time she was sentenced and that her convictions were the result of a guilty plea.

It is apparent that defendant was convicted by the court, not on the basis of a plea. Moreover, at sentencing, the court, defense counsel, and the prosecution all stated that defendant did not have a prior criminal history, which suggests that at the time of sentencing there was not an outstanding warrant against defendant. Accordingly, there are factual errors in the PSIR. Defense counsel did not challenge the accuracy of the statements. However, where the trial court "did not rely on the challenged information in the PSIR in sentencing defendant, resentencing is not required; rather the remedy is to remand for the limited purpose of correcting the PSIR." *People v Spanke*, 254 Mich App 642, 650; 658 NW2d 504 (2003) (citation omitted). In this case, the trial court affirmatively stated that defendant had no prior criminal history. The court also referenced the testimony at the bench trial over which it presided. Accordingly, we conclude that the trial court did not rely on the incorrect information in the PSIR. Therefore, we remand for the ministerial task of correcting the PSIR. *Id*.[10]

---

[10] Defendant argues that defense counsel was ineffective for failing to challenge the accuracy of the PSIR. However, given that the trial court did not rely on the inaccurate statements, we conclude that defendant cannot show that she was prejudiced by defense counsel's failure.

## III. CONCLUSION

We affirm defendant's convictions and sentence, but remand for the limited purpose of correcting the PSIR to reflect that defendant was convicted following a bench trial and that she did not have any outstanding warrants at the time of sentencing. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Douglas B. Shapiro