# Court of Appeals, State of Michigan

## ORDER

People of MI v Jawone Laquan Watkins

Docket No.    337453

LC No.    15-038337-FC

Jane M. Beckering
Presiding Judge

Michael J. Kelly

Colleen A. O'Brien
Judges

The Court orders that the June 26, 2018 opinion is hereby AMENDED. The opinion contained the following clerical error: the signature block incorrectly listed Judge Stephen L. Borrello as a panel member. The correct signature block is:

/s/ Jane M. Beckering
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

In all other respects, the June 26, 2018 opinion remains unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

JUN 2 6 2018
Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JAWONE LAQUAN WATKINS,

       Defendant-Appellant.

UNPUBLISHED
June 26, 2018

No. 337453
Genesee Circuit Court
LC No. 15-038337-FC

Before: BECKERING, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Jawone Watkins, appeals by right his convictions following a jury trial of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Watkins was sentenced to life imprisonment for the murder conviction, 20 to 40 years for the robbery conviction, and two to five years for the CCW conviction, to be served concurrently to a consecutive two-year term of imprisonment for the felony-firearm conviction. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Watkins's convictions arise from the fatal shooting of George Assaf, the owner of Stanley's Meat Market, during a robbery in the afternoon of September 22, 2015, in Flint, Michigan. Video footage taken from the market's surveillance system showed a gunman with a white t-shirt covering his face enter the clerk's area, shoot Assaf several times, and leave the store. Approximately one minute later, the gunman returned and shot Assaf in the head before stealing money from the cash register and taking some cigars. Watkins was arrested shortly thereafter wearing clothing that matched the gunman's clothing as reported by witnesses and captured on the surveillance cameras. When he was arrested, Watkins had cash and cigars. In addition, the gun used in the shooting was found outside the residence where Watkins was first observed by the police. Watkins's DNA was present in a mixture found on the gun's holster. Further, a white t-shirt was found in the area and contained a mixture of DNA from two individuals, with Watkins being the major contributor.

In a videotaped interview, Watkins admitted to shooting Assaf and stealing cash and cigars from the market. He claimed that Assaf had disrespected his mother on a prior occasion. However, at trial, Watkins denied participating in the shooting and robbery. He testified that his

confession was coerced by a man who threatened to harm his mother if he did not tell the police that he committed the robbery and murder. Watkins further testified that the same man forced him at gunpoint to switch clothes and that the man provided him with details about the incident.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

In his brief on appeal and in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Watkins challenges the effectiveness of his trial lawyer. Because Watkins did not raise an ineffective assistance claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

### B. ANALYSIS

In order to establish that his trial lawyer provided ineffective assistance, a defendant bears the burden of showing that his or her lawyer's performance "fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). The defendant must establish the factual predicate for his or her ineffective assistance claim, *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014), and he or she "must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207.

### 1. FAILURE TO MOVE TO SUPPRESS WATKINS'S STATEMENT

Watkins first argues that his lawyer's assistance was ineffective because he did not move to suppress Watkins's statements to the police on the grounds that the statement was involuntary. In support of this claim, Watkins asserts that he told his lawyer to question one the interviewing detectives about why a portion of his recorded interview was edited from the version that was shown to the jury at trial. Watkins alleges that the unedited portion showed the police telling him that "[his] mother['s] house was surrounded, and the only way they could help [him] was if [he] told them everything." Watkins claims that he confessed only because of the threatened harm to his mother.

There is no evidence in the lower court record supporting these factual assertions. However, Watkins attempts to establish the factual predicate for his claim with his own affidavit, which was originally filed with his motion to remand. Watkins was required to submit an "affidavit or offer of proof regarding the facts to be established at a hearing" in support of his motion to remand for an evidentiary hearing. MCR 7.211(C)(1). However, this Court denied the motion, and "a party may not expand the record on appeal, which consists of 'the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced.' " *People v Gingrich*, 307 Mich App 656; 659 n 1; 862 NW2d 432 (2014), quoting MCR 7.210(A)(1). Accordingly, on the record before this Court there is no factual support for the alleged error.

-2-

Moreover, even if the affidavit is considered, its averments are inconsistent with the record, including Watkins's trial testimony. Both Watkins and one of the interviewing detectives testified regarding the circumstances of the interview, and the videotaped recording of the interview was played for the jury. Based on our review of the video recording, there is no discernible interruption or apparent editing of either the video interview (or the transcription of the interview) where the alleged threat would have been removed or redacted. As Watkins observes, there is no mention in the video of his mother's house being surrounded or Watkins's need to make a statement to prevent harm to his mother. Instead, part of the detectives' interviewing technique was to encourage Watkins to confess because of the evidence they had already gathered against him, including the surveillance video, the cash, the cigars, and the gun used in the shooting. The detectives "applaud[ed]" Watkins for stepping up, being a man and telling the truth, and appeared to sympathize with his explanation for shooting Assaf. At trial, the detective acknowledged that the police often use techniques to encourage suspects to trust them, even by lying, because they want suspects to believe that the police already know everything. Here, however, the detective testified that there was no need to lie to Watkins in the interview because they had already gathered the evidence.

In addition to the lack of any discernible suspicious editing of the video, Watkins's testimony is inconsistent with his claim that his confession was caused by police coercion. Watkins states that he directed his lawyer to ask the detective about the police telling Watkins that his mother's house was surrounded. The record reflects that the detective testified before Watkins. Thus, according to Watkins's claims, he had decided to share this information in open court before he testified on his own behalf. When Watkins testified, however, he acknowledged making the statement to the police, but he did not contend that the recording was incomplete or inaccurate, and he did not advance any claim that he had been coerced by the police. Instead, Watkins testified that he confessed to the shooting because a man from the neighborhood he knew as "Gee" or "Gee-Gee" had threatened to harm his mother if he did not admit to the police that he committed the shooting and robbery. Watkins testified in detail about how "Gee-Gee" forced him to change clothes and had provided the details of the crime that Watkins then gave to the police. Watkins was asked about the reason he "made up" a story. In response, Watkins testified that he was afraid of "Gee-Gee" and did not come forward with this information sooner because he thought "Gee-Gee" would harm his family. He then explained that he realized at trial that his life was on the line and it was time for him to tell the truth. In sum, the record reflects that Watkins had ample opportunity at trial to explain the circumstances surrounding his confession. Not only did he fail to mention any police threats, he attributed the confession to circumstances wholly unrelated to the conduct of the police. Thus, there is nothing to support his belated claim of police coercion.

Furthermore, the record does not otherwise support Watkins's claim that his statement was involuntary. Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Coercive police activity is a necessary predicate to a finding that a confession was not voluntary. *Colorado v Connelly*, 479 US 157, 164; 107 S Ct 515; 93 L Ed 2d 473 (1986). The "test of voluntariness is whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired." *People v*

*Givans*, 227 Mich App 113, 121; 575 NW2d 84 (1997). The following factors should be considered when determining the admissibility of a statement:

> [T]he age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse. [*People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988).]

No single factor is conclusive. *Id*.

Here, the interviewing police officers advised Watkins of his *Miranda* rights, and Watkins stated that he understood each of his rights and signed the form. Although Watkins had no prior experience with the police, that is only one factor to consider. Watkins could read and write, and he eventually completed his high school education. There is no indication that Watkins had a learning disability or psychological problems. Watkins was interviewed less than three hours after his arrest, and he was not questioned for an unduly prolonged period of time before he made his incriminating statements. There is no evidence that Watkins was physically abused, or deprived of sleep, food, or drink. In fact, he was given a beverage before the interview and offered a beverage during the interview. There is likewise no indication that he was in ill health, and he did not appear to be under the influence of alcohol or drugs. Notwithstanding Watkins's unsupported claim of a police threat against his mother, there is no evidence that Watkins was threatened with abuse. Indeed, the recording reveals that Watkins made his statement of his own free will, seemingly motivated by the opportunity to help himself given the overwhelming evidence that he knew the police had already collected. The totality of the circumstances demonstrates that Watkins's statement was voluntary. Consequently, Watkins has failed to show either that his lawyer's decision not to move to suppress his statement was objectively unreasonable or that there is a reasonable probability that the outcome would have changed had his lawyer filed a motion to suppress. *Nix*, 301 Mich App at 207. Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).[1]

---

[1] To the extent that Watkins argues in his Standard 4 brief that the prosecutor committed misconduct by introducing his statement because it was involuntarily made, we find his claim without merit. Again, there is no evidence in the record that the statement was, in fact, involuntary or inadmissible. Because Watkins's statement was voluntary and admissible, the prosecutor did not engage in any misconduct by introducing that evidence at trial.

## 2. FAILURE TO OBJECT TO THE AUTOPSY REPORT

Watkins next argues that his lawyer was ineffective for failing to object to the admission of the autopsy findings of Dr. Patrick Cho, which were presented through the testimony Dr. Brian Hunter. The autopsy report indicated that Assaf sustained eight gunshot wounds, that the manner of death was homicide, and that the cause of death was multiple gunshot wounds. Watkins contends that the admission of the autopsy report, which was authored by Dr. Cho, violated his constitutional right to confront the witnesses against him, because Dr. Cho did not testify at trial. The Confrontation Clause prohibits the admission of out-of-court statements that are testimonial in nature unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the declarant. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). Autopsy reports are testimonial in nature. See *People v Childs*, 491 Mich 906 (2012); *People v Lewis*, 490 Mich 921 (2011). We assume *arguendo* that Watkins's lawyer could have successfully prevented the autopsy report from being admitted into evidence and that his performance fell below an objective standard of reasonableness when he failed to do so.

However, Watkins cannot establish that but for his lawyer's alleged error the outcome of his trial would have been different. The autopsy report established the manner and cause of death, but those issues were not disputed at trial. Instead, the defense theory was that Watkins was not the shooter. The autopsy findings did not shed any light on the identity of the shooter. Further, the jury was shown video footage showing Assaf being shot multiple times and heard testimony from a medical examiner investigator, who observed Assaf at the scene, took photographs as part of his investigation, and testified that Assaf suffered multiple gunshot wounds. Accordingly, Watkins cannot show that he was prejudiced by his lawyer's failure to object to Dr. Hunter testifying about the autopsy findings in place of Dr. Cho.

## 3. FAILURE TO OBJECT TO EVIDENCE OF A 911 CALL

Watkins argues that his lawyer was ineffective for failing to protect his constitutional right of confrontation when he failed to object to the admission of a 911 call. "A pretrial statement is testimonial if the declarant should reasonably have expected the statement to be used in a prosecutorial manner and if the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial." *People v Dendel*, 289 Mich App 445, 453; 797 NW2d 645 (2010). In this case, the witness's statements were not testimonial because they were made for the primary purpose of assisting in an ongoing emergency, not in response to a criminal investigation after the incident had occurred. See *Davis v Washington*, 547 US 813, 827-828; 126 S Ct 2266; 165 L Ed 2d 224 (2006). Specifically, the witness made the call to inform the police of the shooting and requested that the police come to the scene. The call was made immediately after Assaf was first shot and the witness was still on the phone when the gunman went back inside the store and shot Assaf again. At times, as the dispatcher was asking the witness questions, the witness interrupted to again ask that help be sent. In the call, the witness was describing the events as they happened and "any reasonable listener would recognize that [the witness] was facing an ongoing emergency." *Id*. at 827. Further, viewed objectively, the questions asked and answered were necessary to resolve the present emergency rather than to just explain what had already happened. See *id*. Given these circumstances, the witness's primary purpose in calling 911 was to report and receive a response for an ongoing emergency. Therefore, we conclude the 911 call

was admissible, its admission did not violate defendant's right of confrontation, and Watkins's lawyer was not ineffective for failing to object to its admission. *Ericksen*, 288 Mich App at 201.

## 4. FAILURE TO CALL EXPERT AND DEFENSE WITNESSES

Watkins also argues that his lawyer should have investigated and called expert witnesses and another individual as a defense witness. Decisions on whether to retain an expert witness are generally a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The failure to call a witness can constitute ineffective assistance only if it deprives the defendant of a substantial defense. *Id.* "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). However, a defendant cannot establish his claim of ineffective assistance by speculating that a witness would have provided favorable testimony. *Payne*, 285 Mich App at 190. Here, Watkins has not made an offer of proof regarding the substance of any favorable testimony that could have been offered. Consequently, Watkins has not established that he was prejudiced by his lawyer's failure to investigate and call the proposed witnesses at trial.

## III. PROSECUTORIAL MISCONDUCT

## A. STANDARD OF REVIEW

Watkins next argues that he is entitled to a new trial because the prosecutor engaged in misconduct that denied him due process. We review unpreserved claims of prosecutorial misconduct for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

## B. ANALYSIS

A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). A conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Smith*, 498 Mich at 476. "The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability." *Aceval*, 282 Mich App at 390.

Here, Watkins contends that the prosecutor presented and failed to correct false testimony from a police detective, who testified that gunshot residue testing is not admissible in court. Assuming *arguendo* that the detective's testimony regarding the admissibility of gunshot residue testing is false, we conclude that Watkins has not shown that testimony had a prejudicial effect on his trial. First, the challenged statement was first made during Watkins's lawyer's questioning of the detective. Although the prosecutor revisited the issue on redirect examination, she did not elicit or first present the matter. In response to why gunshot residue testing was not conducted, the detective explained that it was unnecessary because Watkins had already "confessed to everything." Consequently, even if the detective was incorrect to add that the test is not admissible in court, this was an insignificant point because the detective made clear that the reason the test was not performed was because of the confession. Indeed, the jury observed

the videotaped confession in which Watkins admitted to shooting Assaf and identified the location of where the police found the gun. In addition Watkins's DNA was present in a mixture found on the gun's holster, he was observed coming from the residence where the gun was located, he was wearing identical clothing to the gunman's clothing captured on the surveillance video, and he was in possession of cash and cigars—which were items stolen from the market— when he was arrested. Given these circumstances, there is no reasonable likelihood that the additional information that gunshot residue test results are not admissible in court, even if incorrect, could have affected the judgment of the jury. *Smith*, 498 Mich at 476.[2]

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Colleen A. O'Brien

---

[2] For the same reasons, we reject Watkins's alternative argument that his lawyer was ineffective for failing to object to the detective's testimony that gunshot residue tests are not admissible in court.