PEOPLE v GIVANS

Docket No. 189415. Submitted August 6, 1997, at Grand Rapids. Decided
December 19, 1997, at 9:20 A.M.

Demetrius J. Givans, a juvenile, pleaded guilty in the Jackson Circuit
Court, Alexander C. Perlos, J., of two counts of assault with intent
to rob while armed, but reserved the right to appeal the trial court's
ruling that his confession to the police had been voluntary. The
defendant was sentenced as an adult to prison terms of eight to
twenty-five years, to be served concurrently with one another and
with a previously imposed six- to twenty-five-year sentence for a
Washtenaw County armed robbery conviction. The Jackson Circuit
Court granted sentence credit for inability to post bond for the
period between the defendant's arrest for the Jackson County
offenses and his Washtenaw County sentencing date, but not for
the period between the Washtenaw County sentencing date and the
Jackson County sentencing date. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err in finding that the defendant's con-
fession had not been induced by an improper promise of leniency.
A Jackson police detective did not promise leniency by telling the
defendant that the defendant's cooperation during the interrogation
would be noted in the police report.

2. Under the totality of the surrounding circumstances, the
defendant's confession was the product of an essentially free and
unconstrained choice by the defendant, whose will had not been
overborne and whose capacity for self-determination had not been
critically impaired. The detectives did not apply improper psycho-
logical pressure in discussing the Washtenaw County incident that
led to the defendant's arrest, did not make any representation
about fingerprints, or the lack thereof, at the Jackson County crime
scene by asking the defendant how it would be possible for his fin-
gerprints to be at the crime scene, and did not make any threats or
promises involving the defendant's girlfriend in discussing her pos-
sible involvement in the crimes. With respect to whether the
defendant's mother had insisted on her presence at the defendant's
interrogation, the trial court did not err in finding the police wit-
nesses more credible than the defendant's mother when those wit-

nesses testified that the defendant's mother had not indicated that she wished to be present.

3. The trial court correctly concluded that the defendant was not entitled to sentence credit for the period of incarceration between the Washtenaw County sentencing and the Jackson County sentencing. MCL 769.11b; MSA 28.1083(2) provides that a defendant shall receive credit for the time he has served before sentencing for the offense of which he is convicted. After the Washtenaw County sentencing, the defendant was incarcerated not for the Jackson County offenses, but for the Washtenaw County offense. Thus, the defendant is not entitled to credit toward the Jackson County sentences for the period of incarceration between the Washtenaw County sentencing and the Jackson County sentencing. The denial of the disputed sentence credit did not violate the defendant's right to concurrent sentences inasmuch as the Jackson County sentences were not ordered to begin at the completion of the Washtenaw County sentence.

Affirmed.

1. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS — PROMISES OF LENIENCY.

A police interrogator's promise of leniency, by itself, does not render a defendant's confession inadmissible as involuntary; such a promise is merely one factor to be considered in determining the voluntariness of the confession.

2. CRIMINAL LAW — CONFESSIONS — VOLUNTARINESS — PROMISES OF LENIENCY.

A police interrogator's statement to a defendant who makes a confession that the interrogator will note in the police report that the defendant was cooperative during the interrogation, by itself, does not constitute a promise of leniency that can make the confession involuntary.

3. CRIMINAL LAW — CONFESSIONS — JUVENILES.

The voluntariness of a juvenile's confession is determined by considering the totality of all the surrounding circumstances and ascertaining whether the confession was the product of an essentially free and unconstrained choice by the juvenile or whether the juvenile's will had been overborne and the juvenile's capacity for self-determination critically impaired; relevant to the determination are: whether the requirements of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), were met and the juvenile clearly understood and waived *Miranda* rights; the degree of police compliance with MCL 764.27; MSA 28.886 and the juvenile court rules; the presence of an adult parent, custodian or guardian; the juvenile's personal background; the juvenile's age, education, and intelligence level; the extent of the juvenile's prior experience with the

police; the length of detention before the confession was made; the nature of the questioning; and whether the juvenile was injured, intoxicated, in ill health, physically abused or threatened with abuse, or deprived of food, sleep, or medical attention.

4. SENTENCES — CREDIT FOR INABILITY TO POST BOND.

Sentence credit for a defendant's inability to post bond is limited to time served before sentencing for the offense of which the defendant is convicted; where a defendant starts serving a sentence for a conviction while awaiting sentence for another conviction, no credit toward the second sentence is due for the period between the first sentencing and the second sentencing (MCL 769.11b; MSA 28.1083[2]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*Hoare and Lyda* (by *Madelaine P. Lyda*), for the defendant on appeal.

Before: CAVANAGH, P.J., and HOLBROOK, JR., and JANSEN, JJ.

PER CURIAM. Defendant pleaded guilty of two counts of assault with intent to rob while armed, MCL 750.89; MSA 28.284, but reserved his right to appeal the trial court's finding that his confession was voluntary. Defendant now appeals his convictions as of right. We affirm.

On November 2, 1992, two men attempted an armed robbery at a Jackson gas station. During the robbery attempt, two employees of the gas station sustained gunshot wounds to the face. The robbers' efforts to open the cash register were unsuccessful. When they heard someone coming, they fled.

After receiving an anonymous tip, the police identified defendant as a suspect in the shootings and

attempted robbery. On December 11, 1992, Detectives Carl Roberts and Maurice Crawford of the Jackson Police Department interviewed defendant at the Washtenaw County Youth Center, where defendant was lodged. Defendant initially denied any involvement in the attempted robbery and shootings at the gas station; however, he eventually admitted that he had taken part in the robbery along with Randy Emerson. Defendant stated that his role had been to distract the clerk, while Emerson had held the gun. Emerson had shot the two employees.

The trial court held a *Walker*[1] hearing on November 30, 1993. Defendant did not testify at the hearing.

At the hearing, Roberts testified that after learning that defendant was sixteen years old, he telephoned defendant's mother, Denise Givans. According to Roberts, Givans told him that she had no objection to his speaking with defendant and said that she herself would like to know where defendant was. Givans was not present at the interview at the Washtenaw County Youth Center, and defendant never indicated that he wanted to telephone her.

The interview lasted less than three hours. Roberts told defendant that the detectives were investigating the incident at the Jackson gas station. Roberts then informed defendant of his *Miranda*[2] rights, ascertained that defendant could read and write, and established that defendant was not taking any medication. Afterward, defendant agreed to speak to the detectives about the incident without an attorney present

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

and signed a form acknowledging that he had waived his rights.

Roberts testified that during the interview defendant was very talkative. Defendant initially told Roberts that he was being investigated for an armed robbery in Washtenaw County and talked about the incident at great length. Eventually, defendant began talking about the attempted robbery at the Jackson gas station and denied involvement in it. Subsequently, defendant showed concern regarding what he was going to be charged with and whether he was going to prison. Defendant told Roberts that he wanted to talk to the prosecutor about making a deal. Roberts told defendant that if he cooperated during the interview, Roberts would report it to the prosecutor, as in any other investigation. Approximately an hour after the start of the interview, defendant told Roberts to tear up the notes he had taken and to begin a new set because defendant now wanted to tell the truth. Defendant then admitted that he had participated in the robbery.

Roberts asked defendant if the latter knew how his fingerprints could have been found in the gas station. Defendant explained that he could have handled a bag of chips at some time. When Roberts asked whether there was any way that defendant's fingerprints could have been left on the cash register, defendant said that he could have touched the cash register as he was reaching for the clerk who had been shot. In fact, the police had not identified any of the prints in the gas station as belonging to defendant.

At the end of the interview, Roberts told defendant that he wanted to be certain that the notes reflected

exactly what defendant had stated that his role in the attempted robbery had been. Roberts and defendant then went over the notes page by page, and defendant made a few changes. Afterward, defendant signed a statement indicating that he had read the notes and considered them to be accurate and truthful.

Crawford testified that defendant did not ask for his mother or an attorney to be present during the interview. Crawford stated that he and Roberts encouraged defendant to be truthful because they did not believe that he was the man who pulled the trigger. However, the detectives did not try to make defendant believe that he had no criminal liability for the incident.

The last witness to testify at the hearing was Givans. Givans stated that she spoke to Roberts over the telephone and learned that he wanted to question defendant about an incident in Jackson. Givans testified that she told Roberts that she would prefer it if either she or an attorney were present when defendant was interviewed. She never gave Roberts permission to question defendant without either her or an attorney present.

In an order entered on August 11, 1994, the trial court found that defendant's confession had been knowingly and voluntarily made and ruled that it was admissible evidence. Defendant filed an application for leave to file an interlocutory appeal. This Court denied defendant's application, but ordered the trial court to state on the record the basis of its decision. On November 30, 1994, the trial court issued a supplement to its order stating that it had found the testimony of the two police detectives more credible than that of Givans.

On December 6, 1994, defendant pleaded guilty, but reserved his right to appeal the trial court's ruling regarding the voluntariness of his confession. On September 28, 1995, the trial court sentenced defendant as an adult to concurrent terms of eight to twenty-five years' imprisonment.

I

Defendant argues that the trial court erred in denying his motion to suppress his confession. A trial court's findings of fact following a suppression hearing will not be disturbed by an appellate court unless the findings are clearly erroneous. *People v LoCicero (After Remand)*, 453 Mich 496, 500; 556 NW2d 498 (1996). The trial court's factual findings are clearly erroneous if, after review of the record, this Court is left with a definite and firm conviction that a mistake has been made. *People v Launsburry*, 217 Mich App 358, 362; 551 NW2d 460 (1996).

A

Defendant first asserts that Roberts' promise that he would tell the prosecutor if defendant cooperated constituted a promise of leniency that rendered the confession involuntary. Defendant relies on *People v Conte*, 421 Mich 704; 365 NW2d 648 (1984), which he claims stands for the proposition that a confession induced by a law enforcement official's promise of leniency is involuntary and inadmissible.

Defendant has misread *Conte*. In the lead opinion in that case, three justices (WILLIAMS, KAVANAGH, and LEVIN) did support a rule that a confession obtained by a law enforcement official's promise of leniency automatically renders the confession involuntary and

inadmissible. See *id.* at 739. However, four justices (BOYLE, RYAN, BRICKLEY, and CAVANAGH), and hence a majority of the Court, rejected this rule. These four held that a defendant's inculpatory statement is not inadmissible per se if induced by a promise of leniency. Rather, a promise of leniency is merely one factor to be considered in the evaluation of the voluntariness of a defendant's statements. See *id.* at 751 (BOYLE, J.), 761 (BRICKLEY, J.), 761-762 (CAVANAGH, J.).

Moreover, in the present case, Roberts testified that he merely told defendant that if defendant cooperated during the interview, Roberts would include that fact in his report, as in any other investigation. Roberts further testified that it was never suggested that if defendant told the truth, things would go easier for him. We do not believe that the mere pledge to note defendant's cooperation in a police report, without more, could reasonably be considered a promise of leniency. As this Court noted in a case involving similar facts, such a statement "constitutes a promise but not a promise of leniency." *People v Carigon*, 128 Mich App 802, 811; 341 NW2d 803 (1983). Accordingly, the trial court's implicit finding that defendant's confession was not induced by an improper promise of leniency is not clearly erroneous.

B

Defendant also contends that his statement was not voluntary under the totality of the circumstances. The admissibility of a juvenile's confession depends upon whether, under the totality of the circumstances, the statement was voluntarily made. *People v Rode*, 196 Mich App 58, 69; 492 NW2d 483 (1992), rev'd on other grounds sub nom *People v Hana*, 447 Mich 325;

524 NW2d 682 (1994). The test of voluntariness is whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired. *People v Peerenboom*, 224 Mich App 195, 198; 568 NW2d 153 (1997).

The factors that must be considered in applying the totality of the circumstances test to determine the admissibility of a juvenile's confession include (1) whether the requirements of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), have been met and the defendant clearly understands and waives those rights, (2) the degree of police compliance with MCL 764.27; MSA 28.886 and the juvenile court rules, (3) the presence of an adult parent, custodian, or guardian, (4) the juvenile defendant's personal background, (5) the accused's age, education, and intelligence level, (6) the extent of the defendant's prior experience with the police, (7) the length of detention before the statement was made, (8) the repeated and prolonged nature of the questioning, and (9) whether the accused was injured, intoxicated, in ill health, physically abused or threatened with abuse, or deprived of food, sleep, or medical attention. *People v Good*, 186 Mich App 180, 189; 463 NW2d 213 (1990).

In the instant case, the *Miranda* requirements were met. Defendant does not claim that there was any violation of the juvenile court rules. Defendant's mother was not present at the interview, but he did not request her presence. At the time of the interview, defendant was sixteen years and ten months old.

Defendant had a ninth-grade education and could read and write. Defendant had pending charges of armed robbery, assault, escape, and assault with intent to commit a felony. The entire interview took less than three hours; defendant admitted his involvement in the attempted robbery after approximately one hour. Except for a slight cold, defendant was in good health and was not on any medication. Considering the factors listed in *Good,* we cannot conclude that the trial court's finding that defendant's statement was voluntarily made is clearly erroneous.

However, defendant cites several additional factors that he contends rendered his confession involuntary. First, defendant contends the detectives used improper psychological pressure by bringing up the Washtenaw County incident for which defendant had been arrested. Defendant asserts that the purpose of this discussion was "to impress upon Mr. Givans the extent of the knowledge and power possessed by the police about his activities, and pressure him to believe that his only hope lay in cooperation." However, while both detectives agreed that the interview began with a discussion of the Washtenaw County incident, Roberts testified that the topic was introduced by defendant, not the detectives. Under the circumstances, we cannot find that the discussion of the Washtenaw County incident was likely to have overcome defendant's will and impaired his capacity for self-determination. See *People v Cipriano,* 431 Mich 315, 334; 429 NW2d 781 (1988); *Peerenboom, supra.*

Defendant also contends that it was improper for the detectives to give defendant the impression that his fingerprints had been found in the gas station when they knew that none of the fingerprints found

in the gas station had been identified as defendant's. The detectives did not actually state that defendant's fingerprints had been found; they merely asked defendant "how it would be possible that his prints, his fingerprints would be on the cash register." In *People v Hicks*, 185 Mich App 107, 113; 460 NW2d 569 (1990), this Court held that an actual misrepresentation of the fact that the defendant's fingerprints were on an article retrieved from the crime scene did not make an otherwise voluntary statement involuntary. In the present case, the detectives' implication, while a consideration to be weighed with all other aspects of the interrogation, does not in itself render defendant's confession involuntary.

Defendant also contends that the police suggestions regarding defendant's girlfriend, Jennifer O'Rourke, were coercive. However, while we would not quarrel with the proposition that threats or promises directed at a third party could render a confession involuntary, there is simply nothing in the record to establish that the detectives made any threats or promises regarding O'Rourke. Both detectives testified that the topic of O'Rourke came up and that it was suggested that she had been the getaway driver. Both detectives also stated that defendant did not seem overly concerned at the introduction of O'Rourke's name. This testimony, standing alone, is insufficient to establish that defendant's confession was coerced by threats or promises regarding his girlfriend.

Finally, defendant argues that Givans' testimony that she told Roberts that they could interview defendant only if she or an attorney was present was more credible than Roberts' contrary testimony. How-

ever, questions regarding the credibility of the witnesses are for the trier of fact. *People v Ortiz (After Second Remand)*, 224 Mich App 468, 480; 569 NW2d 653 (1997). The trial court concluded that the testimony of the detectives was more credible than the testimony of Givans. We will not disturb this finding.

Considering the totality of the evidence, we are not left with a definite and firm conviction that the trial court erred in finding that defendant's confession was voluntary. The detectives testified that defendant was so talkative during the interview that they let him lead the conversation and only interjected questions when they wanted to clarify a point. Defendant has cited no factor or combination of factors that indicates that his will was overborne and his capacity for self-determination critically impaired, or that his confession was not the product of an essentially free and unconstrained choice. See *Peerenboom, supra.*

II

Defendant next argues that the trial court erred in denying him credit for the entire time that he was incarcerated between arraignment and sentencing. Defendant relies on MCL 769.11b; MSA 28.1083(2). On appeal, we review de novo questions of law regarding statutory interpretation. *People v Sheets*, 223 Mich App 651, 655; 567 NW2d 478 (1997).

MCL 769.11b; MSA 28.1083(2) provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit for such time served in jail prior to sentencing.

The Supreme Court has stated that the primary purpose of the sentencing credit statute is to equalize, as far as possible, the status of the indigent or lower-income accused with the status of the accused who can afford to post bail. *People v Prieskorn*, 424 Mich 327, 340; 381 NW2d 646 (1985).

Defendant was arrested in Washtenaw County on a charge of armed robbery on December 1, 1992. He pleaded guilty of armed robbery in that case on January 12, 1993. Defendant was arrested for the offenses in the present case on January 13, 1993. He was sentenced to six to twenty-five year's imprisonment for the Washtenaw County armed robbery conviction on March 25, 1993. On December 6, 1994, defendant pleaded guilty in the instant case, and the trial court sentenced him to two concurrent terms of eight to twenty-five years' imprisonment for those offenses.

Defendant was unable to post bond and therefore was detained at all times following his arrest on January 13, 1993. The trial court awarded defendant credit for the period between January 13, 1993, and March 25, 1993, the date that he was sentenced in the Washtenaw County case. Defendant contends that he is also entitled to sentencing credit for the period between March 25, 1993, and September 28, 1995, when he was sentenced in the instant case. The trial court rejected defendant's claim, holding that he was not entitled to credit for the latter period because he was incarcerated for another offense during that time.

We agree with the trial court's conclusion that defendant is not entitled to credit for the period between March 25, 1993, and September 28, 1995. MCL 769.11b; MSA 28.1083(2) provides that a defendant shall receive credit for the time he has

served before sentencing *for the offense of which he is convicted.* Because after March 25, 1993, defendant was incarcerated not for the charges in the present case, but for the Washtenaw County conviction, his claim fails. See *Prieskorn, supra* at 341.

Defendant also argues that failing to award him credit for the time that he was incarcerated between March 25, 1993, and September 28, 1995, violates his right to concurrent sentencing. Under the concurrent sentence rule, one sentence may not be ordered to begin at the completion of another sentence unless statutory authority provides otherwise. *Id.* at 342. However, because commencement of the sentence in this case was not delayed until the completion of the sentence in the Washtenaw County case, the concurrent sentence rule is not implicated.

Affirmed.