*In re* SLL

Docket No. 227139. Submitted October 10, 2000, at Marquette. Decided March 23, 2001. Approved for publication May 25, 2001, at 9:05 A.M.

The Marquette County Prosecutor filed in the Marquette Circuit Court, Family Division, a petition charging SLL with being a juvenile delinquent for engaging in conduct that would have led to the respondent being charged with two counts of second-degree criminal sexual conduct had the respondent been an adult. On motion by the respondent, the court, Michael J. Anderegg, J., suppressed evidence of inculpatory statements made by the respondent in an interview by a police officer, ruling that the statements were involuntary because warnings pursuant to *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), were not given and because the respondent, who went to the police station with his mother, was separated from her. The prosecution appealed by leave granted.

The Court of Appeals *held*:

The trial court clearly erred in finding that the respondent's statements were involuntary. Under the totality of the surrounding circumstances, the respondent's confession was the product of an essentially free and unconstrained choice by the respondent, whose will had not been overborne and whose capacity for self-determination had not been critically impaired.

1. The respondent was not in police custody at the time of the interview, obviating the need for *Miranda* warnings. The failure to give *Miranda* warnings does not provide grounds for finding the respondent's statements involuntary.

2. The separation of the respondent from his mother does not merit a finding that the respondent's statements were involuntary. The respondent knew that his mother had consented to his talking alone with the police officer and that she was readily available to him. No manipulation of the respondent or his mother by the police is established by the circumstances.

3. None of the other factors considered in determining whether a juvenile's confession is voluntary warrants a finding that the respondent's statements were involuntary.

Reversed and remanded.

INFANTS — JUVENILE DELINQUENTS — CONFESSIONS — VOLUNTARINESS.

The voluntariness of a juvenile's confession is determined by considering the totality of all the surrounding circumstances and ascertaining whether the confession was the product of an essentially free and unconstrained choice by the juvenile or whether the juvenile's will had been overborne and the juvenile's capacity for self-determination critically impaired; relevant to the determination are whether the requirements of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), were met and the juvenile clearly understood and waived *Miranda* rights; the degree of police compliance with MCL 764.27 and the juvenile court rules; the presence of an adult parent, custodian, or guardian; the juvenile's personal background; the juvenile's age, education, and intelligence level; the extent of the juvenile's prior experience with the police; the length of detention before the confession was made; the nature of the questioning and whether the juvenile was injured, intoxicated, in ill health, physically abused or threatened with abuse, or deprived of food, sleep, or medical attention.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *Gary L. Walker,* Prosecuting Attorney, and *Scott K. Hanson,* Assistant Prosecuting Attorney, for the people.

*Nancarrow & Hyde, P.C.* (by *George W. Hyde, III*), for the respondent.

Before: GRIBBS, P.J., and M. J. KELLY and HOEKSTRA, JJ.

PER CURIAM. The prosecution appeals by leave granted from an order that suppressed inculpatory statements made by respondent during an interview with a police officer. We conclude that the trial court's determination that respondent's statements were involuntary is clearly erroneous and we reverse and remand.

Respondent, a thirteen-year-old juvenile, was accused by two girls aged four and seven of touching them in a sexually inappropriate manner. After speak-

ing with the complainants, the police officer assigned to investigate the complaint called respondent's mother and requested an interview with respondent. Respondent's mother drove respondent to the police station the day before the scheduled interview and asked to meet with the officer then because respondent was not participating in an extracurricular school activity that day. The officer first spoke to respondent's mother alone, advising her of the criminal allegations against respondent and requesting that he be allowed to speak to respondent alone, even though respondent was not under arrest. Respondent's mother called her husband before permitting the officer to interview respondent alone. In addition, the officer advised respondent's mother that she could contact an attorney, but she did not do so. The mother agreed to allow the interview.

Without advising respondent of the *Miranda*[1] warnings, the officer interviewed respondent for approximately thirty to forty minutes in his office with the door closed for privacy reasons. The officer testified that he told respondent that he could leave and that he did not have to talk to him. The officer also testified that he did not threaten respondent or promise respondent anything in order to persuade respondent to make a statement, nor did respondent appear ill or request any help from the officer. Respondent's mother remained in the reception area during the interview. At first, respondent denied any wrongdoing; however, after being asked multiple times why the girls would make the accusations, respondent

---

[1] *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

admitted part of the allegations and cried. The officer asked respondent's mother to return to his office so that respondent's statements could be revealed to her. After the interview, respondent and his mother left the police station. Thereafter, respondent was charged with two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a).

In his motion to suppress, respondent asserted that neither he nor his mother had been read the *Miranda* rights before his custodial interrogation and that he did not make a voluntary waiver of his Fifth Amendment rights, nor was any waiver knowingly or intelligently made. The trial court held a *Walker*[2] hearing and found that respondent was not in custody at the time of the interview, obviating the need for the *Miranda* warnings,[3] but that nonetheless the statements were not voluntarily made. The trial court offered the following explanation for its conclusion that the statements were not voluntarily made and therefore must be suppressed:

> I have considered the evidence and observed the witnesses as they testified and . . . [I] am prepared to rule on this issue. . . . I agree with the [p]rosecutor's position that *Miranda* is only absolutely required in Michigan during a custodial interrogation and I'm not prepared to say that this was a custodial interrogation.
>
> However, I think in determining whether or not the statement is admissible, the [c]ourt does have to look at the totality of the circumstances to determine whether or not . . . the statement is voluntary and the—there are a variety of factors that courts look at in determining whether state-

---

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[3] The trial court determined that respondent was not in custody and therefore the *Miranda* warnings did not apply. No claim regarding that determination is presently before this Court.

ments are voluntary, including whether there are threats or promises, including the circumstances of illness or depr[i]vation of sleep, or repeated questioning or things of that kind.

In this case, what we have is a 13-year old individual who was separated deliberately from his parent, interviewed in a police station, *Miranda* was not given and *Miranda* . . . can be considered in determining voluntariness even though it's not absolutely required.

Under the . . . totality of the circumstances in this case, I'm not prepared to find by a preponderance of the evidence that this statement is voluntary and so I am going to exclude it.

Thereafter, the trial court and the parties requested that this Court grant leave for interlocutory appeal by presenting the following question: "Was the [trial] [c]ourt's ruling that [r]espondent's confession was involuntary and that his statements were to be suppressed clearly erroneous?" This Court granted leave to appeal limited to the issue raised in the application.

An appellate court is to give deference to a trial court's findings at a suppression hearing. *People v Abraham*, 234 Mich App 640, 644; 599 NW2d 736 (1999); *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997). We conduct an independent review of voluntariness, but will not disturb the trial court's factual findings unless they are clearly erroneous. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000); *People v Givans*, 227 Mich App 113, 119; 575 NW2d 84 (1997); *People v Peerenboom*, 224 Mich App 195, 198; 568 NW2d 153 (1997). A finding of fact is clearly erroneous if, after reviewing the entire record, an appellate court is left

with a definite and firm conviction that a mistake has been made. *Givans, supra*; *Mendez, supra*.

A juvenile's confession is admissible if, given the totality of the circumstances, the statement was voluntarily made. *Givans, supra* at 120. "The test of voluntariness is whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired." *Id.* at 121, citing *Peerenboom, supra*. Factors to be considered in making the determination whether a confession is voluntary include

> (1) whether the requirements of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), have been met and the defendant clearly understands and waives those rights, (2) the degree of police compliance with MCL 764.27; MSA 28.886 and the juvenile court rules, (3) the presence of an adult parent, custodian, or guardian, (4) the juvenile defendant's personal background, (5) the accused's age, education, and intelligence level, (6) the extent of the defendant's prior experience with the police, (7) the length of detention before the statement was made, (8) the repeated and prolonged nature of the questioning, and (9) whether the accused was injured, intoxicated, in ill health, physically abused or threatened with abuse, or deprived of food, sleep, or medical attention. [*Givans, supra* at 121, citing *People v Good*, 186 Mich App 180, 189; 463 NW2d 213 (1990).]

Applying the factors listed in *Givans, supra*, to the facts in this case, we are left with a definite and firm conviction that the trial court erred in finding that respondent's statements were involuntary. Here, the trial court relied on the failure of the police officer to

give *Miranda* warnings and separating respondent from his mother. We conclude that these factors do not support a finding that respondent's statements were involuntary. With regard to *Miranda*, the trial court was correct when it held that the warnings were not required. If not required, we believe it is clearly erroneous to hold that the failure to give them is grounds for a finding that a statement is involuntary. Further, we note that there is no claim made, nor can we find a basis for concluding, that either the statute or the court rules pertaining to juveniles were violated. Respondent's legal rights were not infringed by the officer conducting the interview. Consequently, neither factor one nor factor two of *Givans* offers any basis for suppressing defendant's statements.

In addition, we find that the separation of respondent from his mother, although potentially troublesome in an analysis of the voluntariness of a statement, under the totality of the circumstances here, does not merit a finding that respondent's statement was involuntary. Respondent knew his mother had consented to his talking alone with the officer and that she was readily available to him. No manipulation of respondent or his mother by the police is established by the circumstances. To the contrary, everything was done openly and with the knowledge and consent of respondent and his mother. We believe it is clearly erroneous to conclude that interviewing a juvenile under these circumstances constitutes any evidence from which it is reasonable to conclude that the resulting statements were involuntarily made.

With regard to the remaining factors of *Givans*, we, like the trial court, find nothing that would support suppression of respondent's statements. Conse-

quently, in light of the totality of the circumstances, it cannot be said that respondent's "will has been overborne and his capacity for self-determination critically impaired." *Givans, supra* at 121; *Peerenboom, supra* at 198. The trial court's finding that respondent's statements were involuntary is clearly erroneous, and respondent's statements should not have been suppressed.

Reversed and remanded. We do not retain jurisdiction.