*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREY ANATOLYEVICH BODNAR,

        Defendant-Appellant.

UNPUBLISHED
July 14, 2022

No. 359696
Berrien Circuit Court
LC No. 2021-000705-FH

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

Andrey Anatolyevich Bodnar was pulled over by a Michigan State Trooper because he was allegedly driving 40 miles per hour on a road where the trooper mistakenly believed the speed limit was 35 miles per hour. It is undisputed that there were no posted speed limit signs for the direction that Bodnar was traveling. It is further undisputed that, because there were no posted speed limit signs, the speed limit was 55 miles per hour. Bodnar argues that the traffic stop was unconstitutional and the trial court erred in denying his motion to suppress the evidence seized during the traffic stop. The prosecution maintains that the trooper made a reasonable mistake.

The Motor Vehicle Code is clear and unambiguous. Because the road did not have posted speed limit signs, the speed limit was 55 miles per hour under the statutory "general speed limit." Michigan has had a statutory "general speed limit" of 55 miles per hour since 2006. A reasonably competent officer should have known that. The traffic stop was thus unconstitutional. We reverse the trial court's order denying Bodnar's motion to suppress.

## I. FACTUAL BACKGROUND

On February 27, 2021, Michigan State Trooper Robert Lindsay was contacted by Berrien County Sheriff's Lieutenant Shawn Yech to stop a white van traveling eastbound on I-94 that the U.S. Drug Enforcement Administration (DEA) suspected was transporting marijuana. However,

-1-

Trooper Lindsay was instructed to develop his own probable cause for the stop due to the ongoing federal investigation.[1]

Trooper Lindsay observed a white van on eastbound I-94. The van exited eastbound I-94 at exit 22, turned left onto Grand Mere Road, and drove westbound. Trooper Lindsay followed the van westbound on Grand Mere Road. As the white van crossed the overpass, Trooper Lindsay calculated that the vehicle was moving at 40 miles per hour. Based on his belief that the speed limit was 35 miles per hour on that stretch of road, Trooper Lindsay initiated a traffic stop. Bodnar was the sole occupant of the van. After initial questioning, Trooper Lindsay ordered Bodnar out of the van, performed a pat-down search, and ordered Bodnar to sit in the patrol car. Eventually, Trooper Lindsay requested permission to search the van, which Bodnar gave. During the search, Trooper Lindsay recovered boxes of marijuana and U.S. currency. Bodnar was arrested and charged with one count of possession with intent to deliver between 5 and 45 kilograms of marijuana or a mixture containing marijuana in violation of MCL 333.7401(2)(d)(*ii*).

Bodnar argued that the traffic stop was unconstitutional and moved to suppress the evidence seized during the stop. Specifically, Bodnar asserted that the speed limit on westbound Grand Mere Road was 55 miles per hour and, therefore, he was not speeding when Trooper Lindsay calculated that he was traveling 40 miles per hour. Bodnar argued that Trooper Lindsay was mistaken about the speed limit and that his mistake was objectively unreasonable.

The prosecution argued that, even if Trooper Lindsay was mistaken about the applicable speed limit, his mistake was reasonable under the circumstances.[2] Trooper Lindsay testified that there was a 35-mile-per-hour speed limit sign to the right of the exit ramp for the traffic traveling *eastbound* on Grand Mere Road.[3] But he conceded that there was not a speed limit sign posted for

---

[1] At the preliminary hearing, Trooper Lindsay testified that the van caught his attention because the vehicle was changing lanes and he felt as if the driver was trying to avoid contact with him. He maintained that he initiated the traffic stop because Bodnar was speeding when he exited the freeway. He did not mention the DEA investigation or his conversation with Lieutenant Yech. At the evidentiary hearing, Trooper Lindsay initially testified that, *before* Lieutenant Yech contacted him, the van caught his attention "because of how it was driving." But then he testified that he saw the van *after* he spoke with Lieutenant Yech. Regardless, Trooper Lindsay maintained that he had his own, independent probable cause to initiate the traffic stop that did not involve the DEA investigation.

[2] Alternatively, the prosecution argued that the information received from the DEA gave Trooper Lindsay additional grounds to conduct the traffic stop. While the trial court discussed the facts surrounding the DEA investigation, the trial court did not address this issue because it found that Trooper Lindsay's mistake of law was reasonable.

[3] Trooper Lindsay testified that the 35-mile-per-hour sign was posted at the end of a curve for traffic traveling eastbound on an adjacent road, John Beers Road. There was testimony presented by a traffic reconstruction expert that the sign was "bent a little bit," "difficult to see," and approximately one "football field to the right" of the ramp. Trooper Lindsay acknowledged that

traffic turning left off of the exit ramp onto *westbound* Grand Mere Road. Trooper Lindsay also testified that there was a yellow and black "advisory" 35-mile-per-hour speed limit sign with a curved arrow that was posted on the overpass near the ramp for westbound I-94. But, once again, that sign was for *eastbound* Grand Mere Road traffic. He conceded that there were not any visible speed limit signs for the traffic on westbound Grand Mere Road, which is the direction that Bodnar was traveling.

A Michigan State Police Lieutenant testified that the speed limit for the stretch of westbound Grand Mere Road that Bodnar was driving on was 55 miles per hour pursuant to the statutory general speed limit because there were no posted speed limit signs for westbound traffic. And there were no traffic control orders authorizing the local municipality to lower the speed from the general speed limit of 55 miles per hour. The Lieutenant clarified that the 35-mile-per-hour speed limit sign and the "advisory" speed limit sign[4] were posted for *eastbound* traffic only and neither sign applied to the westbound traffic.

The trial court denied Bodnar's motion to suppress. In doing so, the trial court only addressed whether Trooper Lindsay made a reasonable mistake of law and it did not address the alternative arguments raised by either party. The trial court determined that Trooper Lindsay's belief that the speed limit was 35 for westbound traffic was reasonable because there was a 35-mile-per-hour speed limit sign for eastbound traffic on Grand Mere Road, there was an "advisory" 35-mile-per-hour speed limit sign on the overpass for eastbound traffic on Grand Mere Road, and "this is a very congested area with many roads coming and going, steep curves, steep hillside." Thus, the trial court concluded that "[a] reasonable and prudent person . . . would have thought the speed limit was 35 there."[5] Bodnar now appeals by interlocutory leave granted.[6]

---

speed limit signs are posted at points of change (i.e., where the sign was posted at the end of the curve was where the speed limit for eastbound traffic changed to 35 miles per hour).

[4] The Lieutenant explained that an advisory speed limit sign is intended to notify drivers that they should slow down below the speed limit to confront an upcoming hazard, such as the left-hand curve in this case. Since speed limits in Michigan are in increments of five, he clarified that the "advisory" 35 miles-per-hour speed limit sign for eastbound traffic on Grand Mere Road meant that the speed limit was at least 40 miles per hour for eastbound traffic on that stretch of the road.

[5] In reaching this conclusion, the trial court inserted itself into the analysis, stating, "frankly I've lived here all my life, 58 years, and I would have thought the speed limit was 35 there." The trial court also stated, "I'm familiar with it because I drive this area, but you can clearly see . . . how high the hill is going towards the east and then the grade how it changes with a very busy interstate with three lanes traveling eastbound, three lanes traveling westbound it would be—I think it's very reasonable to conclude that the speed limit was 35 . . . ."

[6] *People v Bodnar*, unpublished order of the Court of Appeals, entered February 24, 2022 (Docket No. 359696). We limited the appeal solely to the issues raised in the application and supporting brief. *Id*. Bodnar raises two additional issues in his brief on appeal—that Trooper Lindsay unconstitutionally extended the traffic stop in order to investigate drug activity that was unrelated to speeding and that his consent to search the van was invalid. These issues were not included in

## II. STANDARD OF REVIEW

We review a trial court's ultimate decision on a motion to suppress de novo, but we review any factual findings for clear error. *People v Elliott*, 494 Mich 292, 301; 833 NW2d 284 (2013). A finding is clearly erroneous if, after an examination of the entire record, the reviewing court is left with a definite and firm conviction that the trial court made a mistake. *People v Givans,* 227 Mich App 113, 119; 575 NW2d 84 (1997). Underlying questions of law are reviewed de novo. *People v Daoud,* 462 Mich 621, 629-630; 614 NW2d 152 (2000).

## III. ANALYSIS

Bodnar argues that Trooper Lindsay's belief that the speed limit was 35 miles per hour on westbound Grand Mere Road was objectively unreasonable. We agree.

A person's right to be secure against unreasonable searches and seizures is guaranteed by both the United States Constitution and the Michigan Constitution. *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020). A seizure occurs "when, in view of all the circumstances, a reasonable person would conclude that he or she was not free to leave." *People v Kavanaugh*, 320 Mich App 293, 300; 907 NW2d 845 (2017). "A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v North Carolina*, 574 US 54, 60; 135 S Ct 530; 190 L Ed 2d 475 (2014) (quotation marks and citations omitted). As this Court explained in *People v Jones,* 260 Mich App 424, 429; 678 NW2d 627 (2004):

> An investigatory stop, which is limited to a brief and nonintrusive detention, constitutes a Fourth Amendment seizure. In order to effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law. The reasonableness of an officer's suspicion is determined on a case-by-case basis in light of the totality of the facts and circumstances and specific reasonable inferences he is entitled to draw from the facts in light of his experience. [Quotation marks and citations omitted.]

"The lawfulness of a search or seizure depends on its reasonableness." *Moorman*, 331 Mich App at 485 (quotation marks and citation omitted). A brief, investigative stop is permitted under the Fourth Amendment "when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped" broke the law. *Navarette v California*, 572 US 393, 396; 134 S Ct 1683; 188 L Ed 2d 680 (2014) (internal quotation marks omitted). Such a stop

---

the statement of questions presented in his application for leave to appeal or briefed in his application. They were simply mentioned in a footnote within his application without any further development. Accordingly, we decline to address those issues. MCR 7.205(E)(4) ("Unless otherwise ordered, the appeal is limited to the issues raised in the application and supporting brief.").

-4-

must be justified by "reasonable suspicion," which "arises from the combination of an officer's understanding of the facts and his understanding of the relevant law." *Heien,* 574 US at 61.

We recognize that the United States Supreme Court has held that a mistake of law can "give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment." *Id*. at 57. But "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes — whether of fact or of law — must be *objectively* reasonable." *Id.* at 66 (emphasis in original). Moreover, "[w]e do not examine the *subjective* understanding of the particular officer involved. *Id.* (emphasis added). "[A]n officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Id.* at 67.

In *Heien*, the Supreme Court applied these principles in the context of a North Carolina statute related to brake lights and an officer's decision to stop a vehicle because it only had one working brake light. The officer mistakenly believed that North Carolina law required two working rear lamps. Before the officer's traffic stop, the North Carolina appellate courts had not interpreted the pertinent statutes at issue. The Supreme Court found that the officer's conclusion that the statute required two working brake lights was reasonable and provided reasonable suspicion for a traffic stop, explaining:

> Although the North Carolina statute at issue refers to "*a* stop lamp," suggesting the need for only a single working brake light, it also provides that "[t]he stop lamps may be incorporated into a unit with one or more *other* rear lamps." NC Gen Stat Ann 20–129(g) (emphasis added). The use of "other" suggests to the everyday reader of English that a "stop lamp" is a type of "rear lamp." And another subsection of the same provision requires that vehicles "have all originally equipped rear lamps or the equivalent in good working order," § 20–129(d), arguably indicating that if a vehicle has multiple "stop lamp[s]," all must be functional.

> The North Carolina Court of Appeals concluded that the "rear lamps" discussed in subsection (d) do not include brake lights, but, given the "other," it would at least have been reasonable to think they did. Both the majority and the dissent in the North Carolina Supreme Court so concluded, and we agree. This "stop lamp" provision, moreover, had never been previously construed by North Carolina's appellate courts. It was thus objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop. [*Id*. at 67-68 (citation omitted).]

In a concurring opinion, Justice Kagan opined that the rule should only apply when a statute is "genuinely ambiguous" such that a reasonable judge could agree with the officer's view. *Id.* at 69-70 (KAGAN, J., concurring).

In this case, by contrast, the Motor Vehicle Code is clear that the speed limit on an unposted section of road is 55 miles per hour. See MCL 257.627(9) ("[T]he speed limit on all trunk line highways and all county highways upon which a speed limit is not otherwise fixed under this act

is 55 miles per hour, which shall be known as the 'general speed limit' ").[7] Trooper Lindsay conceded that there was not a posted speed limit sign for the westbound traffic on Grand Mere Road. While speed limits can be modified if certain procedures are followed, see generally MCL 257.628, it is undisputed that there was no effort to lawfully change the speed limit on the section of westbound Grand Mere Road that Bodnar was traveling on.

This Court has considered *Heien's* application in the context of Michigan's speeding statutes and whether an officer's mistake about the speed limit constitutes a reasonable mistake of law. See *People v Owen*, unpublished opinion of the Court of Appeals, issued July 23, 2019 (Docket No. 339668), lv den 506 Mich 1040 (2020). Although *Owen* is unpublished, we find the decision persuasive because the facts were similar to this case.[8] In *Owen*, the deputy initiated a traffic stop because the defendant was driving 43 miles per hour in what the deputy believed was a 25-mile-per-hour zone. *Id*. at 1. However, the speed limit was actually 55 miles per hour pursuant to the statutory "general speed limit" under MCL 257.628(1). *Id*. at 5. Similar to the current case, there was no speed limit sign posted for the direction that the defendant was traveling. *Id.* And the deputy was aware that there was no sign. *Id*. But, because there were 25-mile-per-hour speed limit signs posted on roads elsewhere within the village, the deputy believed that the speed limit was 25 miles per hour on the unposted road that the defendant was driving on. *Id*. In these circumstances, this Court found the deputy's mistake of law unreasonable, reasoning:

> Although the deputy in this case was not required to be perfect, his mistake of law still had to be one of a reasonable law enforcement officer. Even the deputy in this case admitted that an officer enforcing a speed limit should know the speed limit. The record in this case, however, establishes that the deputy failed to know the basic Michigan law provided under the Motor Vehicle Code, the very law he was tasked to enforce.

> The deputy in this case did not make a reasonable mistake of law because the Motor Vehicle Code since 2006 established the rule of law regarding speed limits throughout Michigan. Under the Motor Vehicle Code, unposted roads were 55 miles per hour. See MCL 257.628(1). The deputy's testimony does not reflect a reasonable interpretation of the Motor Vehicle Code or even a plausible understanding of the applicable law. The record indicates that he never considered the Motor Vehicle Code at all. We conclude that the deputy did not have an objectively reasonable belief that probable cause existed to stop defendant because the totality of the circumstances established that he made an unreasonable mistake of law merely based on an unsupported hunch that the speed limit was 25 miles per hour because other roads were posted elsewhere in the village with that speed limit.

---

[7] Michigan's 55-mile-per-hour "general speed limit" has been in effect since 2006. See 2006 PA 85. It was initially codified at MCL 257.628(1). But the Motor Vehicle Code was amended in 2016 by Public Acts 445 and 447. Now the 55-mile-per-hour "general speed limit" is found at MCL 257.627(9).

[8] The trial court found *Owen* persuasive, but distinguishable.

However, since 2006, nearly 10 years before the traffic stop, the Motor Vehicle Code repealed blanket village-wide speed limits. The circuit court erred because it essentially held that a law enforcement officer's unreasonable ignorance of the law was equivalent to a reasonable mistake of the law. [*Owen*, unpub op at 6 (citation omitted).] [9]

In this case, at the time of the traffic stop, Trooper Lindsay had been a Michigan State Trooper for approximately nine years. He acknowledged that "in order to do [his] job as a police officer [he's] asked to reasonably know the laws[,]" which includes the Motor Vehicle Code and the Uniform Traffic Code. He also conceded that speed limit signs, such as the ones posted for the eastbound traffic, are posted at the point where the speed limit changes. He further admitted that there was not a posted speed limit sign for the westbound traffic on Grand Mere Road. Because there were no speed limit signs posted for westbound traffic of Grand Mere Road, the Motor Vehicle Code dictates that the 55-mile-per-hour "general speed limit" applies. This law has existed since 2006. A reasonably competent officer should have known that. And, the statute is clear and unambiguous. Moreover, two years before this traffic stop, this Court issued the *Owen* decision making it clear that a reasonable law enforcement officer would know that the speed limit on unposted roads is 55 miles per hour under the Motor Vehicle Code and any mistake regarding the application of the 55-mile-per-hour "general speed limit" was not reasonable. Trooper Lindsay's unreasonable ignorance of the law is not equivalent to a reasonable mistake of the law. We find that Trooper Lindsay's mistaken belief that the speed limit was 35 miles per hour was objectively unreasonable.

Under the totality of the circumstances, Trooper Lindsay lacked an articulable and reasonable basis for making the traffic stop. His subjective belief that the speed limit was 35 miles per hour was not objectively reasonable. Therefore, the traffic stop was unconstitutional. The exclusionary rule precludes admission of evidence obtained during an unconstitutional search. *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003). The trial court erred in denying Bodnar's motion to suppress the evidence obtained as a result of the traffic stop.

The prosecution argued to the trial court, and argues to this Court that, even if Trooper Lindsay's mistake was not reasonable, the traffic stop was justified because the police had a particularized suspicion of criminal activity based on the information provided by the DEA. The trial court did not address this issue because it found Trooper's Lindsay's mistake reasonable. We disagree with the prosecution. Trooper Lindsay testified at the preliminary exam and at the

---

[9] The Supreme Court ordered oral argument in *Owen* to consider whether the arresting officer "made an objectively reasonable mistake of law regarding the applicable speed limit that justified the traffic stop of the defendant's vehicle." *People v Owen*, 505 Mich 1008 (2020). However, the Supreme Court ultimately denied leave to appeal. *Owen*, 506 Mich at 1040. In his dissenting opinion, Justice Zahra stated that "the vicinity of the road at which defendant was stopped displayed no southbound-posted speed limit, but there was a northbound-posted speed limit of 25 miles per hour." *Id.* at 1040 (ZAHRA, J., dissenting). Thus, just like this case, there was not a posted speed limit sign for the direction that the defendant was traveling, but there was one posted for traffic traveling in the opposite direction.

evidentiary hearing that he developed his own probable cause to initiate the traffic stop, which was based on his mistaken belief that Bodnar was speeding.

## IV. CONCLUSION

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel