*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KOLBIE DUSTIN MCGINN,

Defendant-Appellant.

UNPUBLISHED
March 25, 2025
12:11 PM

No. 365484
Calhoun Circuit Court
LC No. 2021-002143-FC

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b), armed robbery, MCL 750.529, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 40 to 60 years' imprisonment for the felony-murder conviction, 23 to 60 years' imprisonment for the armed robbery conviction, and consecutive terms of two years' imprisonment for each count of felony-firearm. We affirm.

## I. FACTUAL BACKGROUND

This case arises from the robbery and murder of the victim in November 2019. Officers eventually identified defendant, who was 17 years old at the time, as a suspect. A search warrant executed at the house where he lived with his girlfriend's family revealed that defendant had some of the victim's belongings. Officers executed a second search warrant at defendant's mother's house, where they discovered a burn pit containing gunshot casings. Forensics experts later linked the gunshot casings to the murder weapon. Officers also obtained surveillance video showing defendant with a gun matching the description of the murder weapon and footage of defendant and one of his girlfriend's brothers, Trenton Cohoon, removing and burning their clothes in the burn pit on the day that the victim was killed.

Defendant was subsequently arrested and transferred to county jail. Two days later, defendant requested to speak to a detective. A detective came to meet with defendant at approximately 1:00 a.m. During the conversation, defendant initially denied involvement in the victim's death before eventually confessing that he went to the victim's house with the intent to

-1-

rob him. Defendant stated that he heard Cohoon shoot the victim, and that he ran away with a lockbox full of marijuana paraphernalia that belonged to the victim. Defendant admitted that he burned his clothes in a pit in his mother's yard. Defendant also stated that after the murder occurred, he took the murder weapon from where Cohoon had stashed it and brought it to his mother's house. Defendant claimed that he fired the gun several times for fun.

After a three-day jury trial, defendant was convicted and sentenced as earlier described. This appeal followed.

## II. ANALYSIS

### A. SENTENCING

On appeal, defendant argues that his sentence for felony-murder was disproportionate to his circumstances as a juvenile offender. We disagree.

We review sentencing decisions within the recommended sentencing guidelines range for abuse of discretion. *People v Posey*, 512 Mich 317, 325; 1 NW3d 101 (2023). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome and the trial court may not deviate from that principled range of outcomes." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "[A]ppellate courts must review all sentences for reasonableness, which requires the reviewing court to consider whether the sentence is proportionate to the seriousness of the matter." *Posey*, 512 Mich at 325. "[T]he sentence should be tailored to the particular circumstances of the case and the offender . . . ." *People v McFarlin*, 389 Mich 557, 574; 208 NW2d 504 (1973). "When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Posey*, 512 Mich at 360.

In general, a person who commits murder in perpetration of a robbery is guilty of first-degree felony murder, which is punishable by imprisonment for life without eligibility for parole. MCL 750.316(1)(b). However, under MCL 769.25, life imprisonment without the possibility of parole is not mandatory for defendants who were under the age of 18 when they committed felony-murder. MCL 769.25(1)(a). The purpose of this exception is to ensure alignment with the Eighth Amendment to the United States Constitution's prohibition on cruel and unusual punishment. US Const, Am VIII; *Miller v Alabama*, 567 US 460, 469; 132 S Ct 2455; 188 L Ed 2d 407 (2012). "[T]he Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile defenders . . . [because] such a scheme poses too great a risk of disproportionate punishment." *Miller*, 567 US at 479.

If the prosecution requests that a juvenile defendant be sentenced to life imprisonment without the possibility of parole, the trial court must hold a hearing on the motion. MCL 769.25(5) and (6). At the hearing, "the trial court shall consider the factors listed in *Miller v Alabama*, 567 US [460]; 183 L Ed 2d 407; 132 S Ct 2455 (2012), and may consider any other criteria relevant to its decision, including the individual's record while incarcerated." MCL 769.25(6). The *Miller* factors include:

> (1) the juvenile's "chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) the

juvenile's family and home environment—"from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) "the incompetencies of youth," which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense; and (5) the juvenile's "possibility of rehabilitation." [*People v Taylor*, 510 Mich 112, 126; 987 NW2d 132, 138 (2022), quoting *Miller*, 567 US at 477-478.]

"[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 567 US at 489. Consideration of these factors is meant to ensure that the principle of proportionality is respected by ensuring that trial courts consider the nature of the crime at issue, the juvenile defendant's age, and age-related traits or characteristics. *Id*.

If the trial court declines to sentence a juvenile defendant to life without parole, it "shall sentence the individual to a term of imprisonment for which the maximum term shall not be less than 60 years and the minimum term shall be not less than 25 years or more than 40 years." MCL 769.25(9). Consideration of youth and its attendant circumstances is also required when imposing a term-of-years sentence on a juvenile defendant. *Boykin*, 510 Mich at 188. Proof that a court considered a juvenile defendant's youth can include explicit statements, orders for psychological evaluation, adherence to legal standards, alignment with youth-corrections-report recommendations, and similar judicial actions that implicate weighing the defendant's youth before sentencing. See, e.g., *Jones v Mississippi*, 593 US 98, 114; 141 S Ct 1307; 209 L Ed 2d 390 (2021); *Boykin*, 510 Mich at 193. However, "an on-the-record sentencing explanation is not necessary to ensure that a sentencer considers a defendant's youth." *Id*., quoting *Jones*, 593 US at 114.

Here, the prosecution requested that defendant, who was 17 years old when he committed the charged offenses, be sentenced to life without the possibility of parole. The trial court complied with the statutory mandate to hold a hearing on the prosecution's motion. See MCL 769.25(6). Defendant contends that the court did not adequately consider his youth and attendant circumstances during sentencing, but this argument is unsupported by the record. At defendant's sentencing, the trial court clearly considered his youth and attendant circumstances during its review of the *Miller* factors. The court considered several mitigating circumstances, including that defendant's intelligence was still developing, that his home environment was poor, and that he had the potential for rehabilitation. As aggravating circumstances, the court found that defendant had supportive adults in his life upon whom he chose not to rely, that he clearly executed his criminal plan, that peer pressure was not a factor, and that he was aware of the consequences of his actions, including criminal liability. The trial court specifically reasoned:

The facts and the circumstance[s] of this case are dire to say the least, and do not weigh in your favor whatsoever. In fact, if it was a meter, it would push it all the way into the red.

-3-

Dr. Haugen . . . indicates there is some potential for rehabilitation in your case, which again, starts to move the meter a different direction . . . . [Y]our age and maturity; you were 17 when this happened. You're not fully developed intelligence wise for a number of years, science would say until you're about 25—26, your brain development wouldn't . . . be complete. Facts and circumstances of your childhood come into play. Those weren't the best for you, but as Mrs. Towns indicates, no one has a perfect life, and you have had people in your life that were willing to take you a [sic] positive direction, you just chose not to, which is unfortunate for you. Your home environment, it wasn't great, but as I indicated, there were people there that were willing and able, and I think could've provided you a good home life. Circumstances of the offense, including your role—the role of a juvenile. It's very clear this was your plan and you executed it to great effectiveness unfortunately. And the influence of any peer pressure, which I don't find there were any in this particular case. Any disadvantage you had in dealing with the justice system, you knew what the justice system was all about, have no doubt you knew what the consequences of taking somebody's life were, and the potential you were facing, but you cast that aside so that you could get whatever you wanted in the given moment. Instead of living for the rest of your life, you were living for the moment or the day, which so often times, regardless of whether you're a juvenile or adult, people do live for the pleasure of a moment, or the gratification of having money or drugs, as opposed to thinking about—you know— *"How am I gonna live and take care of myself into my elder years?"* You think about only for the next few minutes, which is—which is sad. That seems to be a—a disease that has infected our whole society.

"[T]rial courts need not articulate their bases for considering an offender's youth during sentencing hearings conducted under MCL 769.25 and MCL 769.25a in which the offender is sentenced to a term of years." *Boykin*, 510 Mich at 190. Even so, the rationale discussed on the record shows that the court adequately considered defendant's youth and attendant circumstances during sentencing. Therefore, defendant cannot show that his sentence was disproportionate.

## B. VOLUNTARINESS OF CONFESSION

In his Standard 4 brief,[1] defendant argues that he was denied a fair trial because defense counsel failed to move to suppress the video evidence of defendant's confession, which defendant claims was involuntarily given. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[2] evidentiary hearing. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266

---

[1] Administrative Order No. 2004-6, 471 Mich ci, cii, Standard 4 (2004).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

(2012). Defendant did neither. Our review is therefore "limited to mistakes apparent from the record." *Id*.

"[A]n involuntary confession is inadmissible under both state and federal constitutions on the ground that such admission would violate a defendant's due process right to a fundamentally fair trial and his self-incrimination right against compelled testimonial disclosure." *People v Conte*, 421 Mich 704, 724; 365 NW2d 648 (1984). See US Const, Am V; Const 1963, art 1, § 17. "A juvenile's confession is admissible if, given the totality of the circumstances, the statement was voluntarily made." *In re SL*, 246 Mich App 204, 209; 631 NW2d 775 (2001). "The test of voluntariness is whether, considering the totality of the circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination is critically impaired." *Id*. (quotation marks and citations omitted).

To determine whether a juvenile's confession was voluntary and admissible, we must consider the following nine factors:

> (1) whether the requirements of *Miranda v Arizona*, 384 U.S. 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), have been met and the defendant clearly understands and waives those rights[;] (2) the degree of police compliance with MCL 764.27 and the juvenile court rules[;] (3) the presence of an adult parent, custodian, or guardian[;] (4) the juvenile defendant's personal background[;] (5) the accused's age, education, and intelligence level[;] (6) the extent of the defendant's prior experience with the police[;] (7) the length of detention before the statement was made[;] (8) the repeated and prolonged nature of the questioning[;] and (9) whether the accused was injured, intoxicated, in ill health, physically abused or threatened with abuse, or deprived of food, sleep, or medical attention, *People v Good*, 186 Mich App 180, 189; 463 NW2d 213 (1990). [*People v Givans*, 227 Mich App 113, 121; 575 NW2d 84 (1997).]

Considering these factors, the record supports the conclusion that defendant's confession was voluntary. First, a video recording of the interview shows that defendant was promptly advised of his rights. The detective stated each right separately with an accompanying question to defendant of whether he understood. Defendant answered that he understood after each statement. Although the detective did not use the term "*Miranda* rights," he clearly told defendant that he was advising defendant of his rights, to which defendant responded "*Miranda* rights." Therefore, it is clear that defendant understood his rights.

As to the second factor because defendant was 17 years old and facing felony charges, he was treated as an adult and not subject to the juvenile-jurisdiction requirements. See MCL 600.606; MCL 712A.3. See also *People v Brooks*, 184 Mich App 793, 797-798; 459 NW2d 313 (1990). Likewise, with regard to the third factor, "[t]he absence of a parent, guardian, attorney, or other adult advisor does not necessarily mean that defendant's confession should have been excluded." *People v Inman*, 54 Mich App 5, 9; 220 NW2d 165 (1974). Here, defendant did not request to have an adult present despite having spoken with his mother on the phone hours before requesting to speak with a detective.

Defendant's personal background, age, education, and intelligence level additionally support the conclusion that his confession was voluntary pursuant to the fourth and fifth factors. Specifically, defendant had supportive people in his life, he was 17 years old with a tenth-grade education level, and he had above-average "street smarts." See *Givans*, 227 Mich App at 121-122. Both the detective and a psychologist who interviewed defendant opined that he was not "highly immature" and was "street smart." In the interview video, defendant referenced conviction-rate statistics and displayed a significantly advanced vocabulary for his age. He also had substantial knowledge about firearms and marijuana-dealing. These factors corroborate the trial court's finding that his age and intelligence did not hinder his ability to understand his circumstances. See *id*.

As to the sixth factor, defendant had nine prior charges, had been on probation, and had served time in jail. Thus, his extensive experience with law enforcement supports the conclusion that his confession was voluntary. See *id*. at 122. Additionally, as to the seventh and eighth factors, the length of defendant's detention and the nature of questioning were not prolonged. See *id*. Defendant requested to speak with a detective and confessed after 15 minutes. The detective did not offer or promise leniency, lie about evidence or knowledge, or threaten defendant. Therefore, defendant was not subjected to coercive interrogation tactics that could otherwise render his confession involuntary. See *id*. Finally, regarding the ninth factor, defendant concedes that he was not harmed or in a compromised state during the interview. See *id*. Accordingly, under the totality of the circumstances, the record supports the conclusion that defendant's confession was voluntary and admissible. See *id*.

Because defendant cannot show that his confession was involuntary, he likewise cannot show that defense counsel was ineffective for failing to move to suppress the video recording of his confession. To succeed on a claim of ineffective assistance of counsel, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that that outcome would have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citations omitted).

Defense counsel will not be considered ineffective for failing to make a meritless argument or raise a futile objection. *People v Isrow*, 339 Mich App 522, 532; 984 NW2d 528 (2021). Here, because defendant's confession was not coerced, a motion to suppress the evidence of the confession would have been futile. Therefore, defendant cannot establish the factual predicate for his claim. Furthermore, defendant cannot show that his counsel's performance prejudiced him. See *Yeager*, 511 Mich at 488. The record demonstrates that there was substantial, uncontested evidence presented to demonstrate defendant's guilt. See *People v Roscoe*, 303 Mich App 633, 642; 846 NW2d 402 (2014). In fact, although defendant argues that his confession was the "soul [sic] determinative factor" supporting the jury's guilty verdict, he simultaneously acknowledges that there was other evidence tying him to the crime, including matching bullet casings, fingerprints, video evidence, and corroborating testimony. Therefore, even if defendant's confession had been suppressed, ample evidence supported the jury's finding that defendant was guilty. See *id*. Accordingly, defense counsel's performance did not prejudice defendant. He is not entitled to relief in this matter.

Affirmed.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Michelle M. Rick