*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RUSSELL TYSHAUN BRIGGS, JR., Minor.

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

RUSSELL TYSHAUN BRIGGS, JR.,

        Respondent-Appellant.

UNPUBLISHED
September 19, 2024

No. 367253
Wayne Circuit Court
Family Division
LC No. 2021-001149-DJ

Before: CAMERON, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

In this juvenile delinquency matter, respondent appeals as of right his bench trial adjudications for carjacking, MCL 750.529a, carrying a concealed weapon (CCW), MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court imposed a sentence of 81 to 135 months' imprisonment for the carjacking adjudication, 0 to 17 months' imprisonment for the CCW adjudication, and two years' imprisonment for the felony-firearm adjudication. On appeal, respondent challenges the trial court's denial of his midtrial motion to suppress his inculpatory statements and for a *Walker*[1] hearing. Respondent also challenges the sufficiency of the evidence to sustain his adjudications. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the armed carjacking of Briana Bogden and Ariana Woodeck on November 18, 2021, in Livonia. Respondent was 17 years old at the time. At approximately 9:50 p.m., roommates Bogden and Woodeck were walking across their apartment complex parking lot toward Bogden's vehicle, a white Jeep Grand Cherokee. After reaching the vehicle, Bogden

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

entered the driver's side and Woodeck entered the passenger's side. A dark sedan pulled up behind the Jeep and two African American males, dressed in all black and wearing ski masks, exited the sedan and approached the Jeep. One of the males pointed a gun at Bogden and asked for her keys; the other grabbed Woodeck's arm, pressed a gun to Woodeck's chest, and told Woodeck to exit the vehicle. After the victims exited the Jeep, they saw the Jeep drive out of the parking lot, followed by the dark sedan. The victims immediately reported the theft to police. At trial, neither victim could identify respondent as one of the perpetrators of the carjacking because the perpetrators were wearing masks.

Within twenty minutes of the reported carjacking, law enforcement personnel observed the Jeep and black sedan driving side-by-side approximately three miles south of the apartment complex. The driver of the white Jeep led law enforcement on a high-speed pursuit, ultimately crashing the Jeep and fleeing on foot. Livonia Police Department Officer Jonathon Gosur followed the dark sedan, a black Chevy Malibu, which ultimately parked in a parking lot less than one mile from the location where the Jeep crashed. Officer Gosur and Sergeant Bradley Lineberry saw respondent exit the Malibu and walk across the parking lot. When respondent turned around and began walking back toward the Malibu, Sergeant Lineberry approached respondent from behind, identified himself as law enforcement, and wrapped his arms around respondent. At the time, respondent had his cell phone open to a map application with a pin placed in the area where the Jeep crashed. Sergeant Lineberry asked respondent if he had a gun and respondent stated that the gun was in the center console of the Malibu. Without further prompting, respondent stated that the carjacking was "all his idea." Respondent was thereafter transported to the Livonia Police Department, where he was interviewed by Officer Aaron Ruber and Sergeant Thompson.[2] During the interview, respondent admitted that he was the perpetrator who approached Woodeck, pointed a gun at her, and ordered her out of the Jeep. Respondent claimed that the carjacking was his idea and that his corespondent did not want to participate. Respondent was thereafter charged with carjacking, CCW, and felony-firearm.[3]

Petitioner moved to admit a video of respondent's interview with Officer Ruber and Sergeant Thompson at respondent's bench trial. Respondent moved to suppress his inculpatory statements during the interview and for a *Walker* hearing on the basis that his statements were not voluntarily made. The trial court adjourned the bench trial to allow the parties to file briefs regarding voluntariness. After briefing and oral argument, the trial court found that respondent's statements were voluntarily made and denied respondent's motion to suppress and for a *Walker* hearing. The trial court ultimately adjudicated respondent responsible for carjacking, CCW, and felony-firearm, and sentenced him as indicated above. Respondent now appeals.

## II. VOLUNTARY CONFESSION

Respondent first argues that his inculpatory statements to Sergeant Lineberry and during his police interview were not voluntarily made; accordingly, respondent argues that the trial court

---

[2] Sergeant Thompson's first name was not provided in the record.

[3] Respondent's corespondent, MAR, was also charged with carjacking, CCW, and felony-firearm, but the charges against MAR were dismissed for reasons not relevant to this appeal.

erred by admitting his statements to Sergeant Lineberry, and erred by finding that his statements during the police interview were voluntarily made. We disagree.

"Both the state and federal constitutions guarantee that no person shall be compelled to be a witness against himself or herself." *People v Cortez*, 299 Mich App 679, 691; 832 NW2d 1 (2013), citing US Const, Am V; Const 1963, art 1, § 17. To protect the right against self-incrimination, police officers must provide adequate *Miranda*[4] warnings before a custodial interrogation. *In re NC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361548); slip op at 5. A defendant's statements to police during a custodial interrogation are inadmissible unless the defendant voluntarily, knowingly, and intelligently waived the right against self-incrimination. *People v Barritt*, 325 Mich App 556, 561-562; 926 NW2d 811 (2018). However, "voluntarily given confessions that are not the result of impermissible custodial interrogations remain admissible." *People v White*, 493 Mich 187, 194; 828 NW2d 329 (2013).

## A. RESPONDENT'S STATEMENTS TO SERGEANT LINEBERRY

Turning first to respondent's challenge to the admissibility of the statements he made to Sergeant Lineberry, respondent argues that these statements were not voluntarily made because respondent was in custody but was not advised of his *Miranda* rights before making the statements at issue. Respondent failed to preserve this issue by not moving to suppress these statements or otherwise objecting to the admission of these statements at trial, nor did respondent challenge the admissibility of his statements to Sergeant Lineberry in his midtrial motion to suppress the statements made during his police interview. This challenge is therefore unpreserved. See *People v Henry (After Remand)*, 305 Mich App 127, 144; 854 NW2d 114 (2014) (the defendant preserved his challenge to the admissibility of his confession by filing a motion to suppress the confession); *People v Whitehead*, 238 Mich App 1, 7 n 5; 604 NW2d 737 (1999) (a defendant preserves for appeal a challenge to the voluntariness of a confession by requesting a *Walker* hearing).

This Court reviews unpreserved issues regarding the admissibility of a confession for plain error affecting substantial rights. *People v McCrady*, 244 Mich App 27, 29; 624 NW2d 761 (2000). "Under the plain error rule, defendants must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected a substantial right of the defendant." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006). To establish plain error affecting a substantial right, the defendant must demonstrate that the error affected the outcome of the trial court proceedings. *Id*. When a defendant establishes plain error affecting substantial rights, reversal is only warranted when "the plain, forfeited error resulted in the conviction of an actually innocent defendant," or when the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks and citation omitted; alteration in original).

A custodial interrogation occurs when police initiate questioning "after the accused has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). This Court looks at the

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

totality of the circumstances to determine whether a defendant was in custody at the time of an interrogation. *In re NC*, ___ Mich App at ___; slip op at 5. "The inquiry is objective, and we must consider both whether a reasonable person in the defendant's situation would believe that he or she was free to leave and whether the relevant environment present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. at ___; slip op at 5-6 (quotation marks and citation omitted; alteration in original). Among the factors relevant to whether a reasonable person would have felt free to leave are (1) the location of the questioning, (2) the duration of the questioning, (3) the statements made during the questioning, (4) the presence or absence of physical restraints during the questioning, and (5) the interviewee's release at the end of the questioning. *Id*. at ___; slip op at 6. If the subject is a juvenile, "this Court may objectively consider the juvenile's age when determining whether he or she would have felt free to leave or to terminate the encounter so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer." *Id*. (quotation marks and citation omitted).

Sergeant Lineberry testified that, when he saw respondent turn around in the Dollar Tree parking lot to return to the Malibu, Sergeant Lineberry approached respondent from behind, identified himself as law enforcement, and wrapped his arms around respondent so respondent could not access any firearms on his person. Sergeant Lineberry then held respondent on the ground. Under these circumstances, a reasonable person would not feel free to leave; indeed, Sergeant Lineberry acknowledged that respondent was not free to leave the scene. Accordingly, at the time that respondent made the inculpatory statements to Sergeant Lineberry, respondent was in police custody.

However, the mere fact that respondent was in police custody when the inculpatory statements were made is not the end of the inquiry whether the absence of *Miranda* warnings renders respondent's inculpatory statements inadmissible. Our Supreme Court has recognized an exception to the rule that *Miranda* warnings must generally precede police questioning of a subject in custody when the questioning is "objectively necessary" to ensure public safety. *People v Attebury*, 463 Mich 662, 670-671; 624 NW2d 912 (2001). In this context, the term "public safety" encompasses the safety of police officers and of the general public. *Id*. at 671. When a defendant makes inculpatory statements in response to questioning that is objectively necessary to ensure public safety without first being advised of the *Miranda* rights, those statements are admissible. *Id*. at 674.

Because law enforcement believed respondent had just been involved in an armed carjacking, Sergeant Lineberry asked respondent whether respondent had a gun on his person for the safety of Sergeant Lineberry and other officers on the scene. Respondent told Sergeant Lineberry that the gun was in the center console. Sergeant Lineberry's inquiry whether respondent had a gun on his person at the time of his detention was objectively necessary to ensure public safety when Sergeant Lineberry was aware that respondent was suspected of committing an armed carjacking approximately 20 minutes before his arrest. Thus, Sergeant Lineberry was not required to provide respondent with *Miranda* warnings before asking respondent whether he had a gun on his person, and the admission of respondent's statement that the gun was in the Malibu was not error.

Nor was the admission of respondent's subsequent inculpatory statements to Sergeant Lineberry error. "The fundamental import of the privilege [against self-incrimination] while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." *White*, 493 Mich at 194 (quotation marks and citation omitted). Police are not required to stop a subject from voluntarily making inculpatory statements that are not responsive to police questioning. *Id*. at 194-195. Only when a person is subjected to "either express questioning or its functional equivalent" are police required to advise the subject of *Miranda* rights. *Id*. at 195 (quotation marks and citation omitted). Thus, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. (quotation marks and citation omitted).

Sergeant Lineberry testified that, after respondent was detained, respondent stated that the carjacking was his idea. Sergeant Lineberry did not ask any questions to elicit this statement from respondent; respondent made the statement unprompted while he was in custody. No evidence was presented that police spoke or acted in such a way as to elicit this statement from respondent. Respondent's statement to Sergeant Lineberry, therefore, was a voluntarily-given statement that was "not the result of impermissible custodial interrogations," *id*. at 194, and the admission of this statement was not error.

## B. RESPONDENT'S INTERVIEW STATEMENTS

Turning next to respondent's preserved challenge to the admissibility of his inculpatory statements during the police interview, this Court reviews preserved issues regarding a trial court's decision on a motion to suppress de novo. *People v Stewart*, 512 Mich 472, 480; 999 NW2d 717 (2023). This Court defers to the trial court's factual findings underlying its decision on a motion to suppress so long as those findings are not clearly erroneous. *People v Eliason*, 300 Mich App 293, 304; 833 NW2d 357 (2013). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Stewart*, 512 Mich at 480.

A juvenile's confession is admissible when, under the totality of the circumstances, the statement was voluntarily given. *People v Givans*, 227 Mich App 113, 120; 575 NW2d 84 (1997). "The test of voluntariness is whether, considering the totality of all the surrounding circumstances, the confession is the product of an essentially free and unconstrained choice by its maker, or whether the accused's will has been overborne and his capacity for self-determination critically impaired." *In re SLL*, 246 Mich App 204, 209; 631 NW2d 775 (2001) (quotation marks and citation omitted). Factors that must be considered in determining whether a juvenile's confession was voluntary include:

> "(1) whether the requirements of *Miranda* . . . have been met and the defendant clearly understands and waives those rights, (2) the degree of police compliance with MCL 764.27 . . . and the juvenile court rules, (3) the presence of an adult parent, custodian, or guardian, (4) the juvenile defendant's personal background, (5) the accused's age, education, and intelligence level, (6) the extent of the defendant's prior experience with the police, (7) the length of detention before the statement was made, (8) the repeated and prolonged nature of the questioning, and

(9) whether the accused was injured, intoxicated, in ill health, physically abused or threatened with abuse, or deprived of food, sleep, or medical attention." [*Id.*, quoting *Givans*, 227 Mich App at 121.]

Record evidence supported all of the trial court's findings as to the factors it explicitly considered in determining whether respondent's statements were voluntary. The trial court found that Officer Ruber and Sergeant Thompson were respectful to respondent and respondent began making inculpatory statements without coercion, threats, or force by the police. This finding is supported by the video of respondent's police interview which demonstrates that Officer Ruber and Sergeant Thompson were respectful with respondent throughout the interview and did not threaten or force respondent to make any statements. The video of the police interview also supports the trial court's finding that respondent did not request an attorney or the presence of a parent before making the inculpatory statements. At the beginning of the interview, Officer Ruber read respondent his *Miranda* rights and provided a written *Miranda* waiver to respondent, which respondent read, initialed, and signed. Officer Ruber then asked respondent what happened earlier that evening, and respondent began to make the inculpatory statements at issue. Respondent did not request the presence of a parent or an attorney at any time before making the inculpatory statements. Only when respondent learned that he would not be allowed to call his boss to inform him that he would miss his shift at work did respondent request to contact his attorney and the presence of his mother. Neither Officer Ruber nor Sergeant Thompson asked respondent any questions after respondent made these requests, and respondent made no inculpatory statements after that point. Because the trial court's findings are supported by record evidence and we are not left with the definite and firm conviction that the trial court made a mistake, the trial court's findings were not clearly erroneous and we use those findings in analyzing the legal issues presented.

In considering the totality of the circumstances, respondent's inculpatory statements during the police interview were voluntarily made, and the trial court did not err by finding so. Officer Ruber read respondent his *Miranda* rights, and respondent read, initialed, and signed a *Miranda* waiver.[5] That respondent understood his *Miranda* rights is evident by respondent's request, at the end of the interview, to speak with his attorney. Respondent only requested to call his attorney after he was told he could call his boss; respondent then asked to call his attorney so that his attorney could call his boss. When respondent was told that he cannot make any phone calls, including to his attorney, respondent asked if he can have a parent present, "like [Officer Ruber] first said." Thus, although the video does not depict Officer Ruber asking respondent whether he would like a parent present, it appears that respondent was advised that he could have a parent present upon request before making the inculpatory statements at issue. This demonstrates that

---

[5] Respondent argues on appeal that the signature on the *Miranda* waiver "seems to be not [sic] juvenile's signature, according to his attorney." We located no record evidence supporting the assertion that the signature on the *Miranda* waiver is not respondent's signature. Further, the video of the interview depicts respondent reading, initialing, and signing the form from which Officer Ruber read respondent his *Miranda* rights.

respondent understood both his right to an attorney and that he could have a parent present upon request.

Respondent appears to understand everything said to him during the police interview, his answers were responsive to the questions he is asked, and he communicated clearly and coherently. He stated during the interview that he has been to "real jail" before; thus, respondent appears to have prior experience with police. He was arrested on November 18, 2021, at approximately 10:08 p.m., the police interview began on November 19, 2021, at 1:08 a.m., and the interview concluded at 1:49 a.m. Accordingly, respondent was not detained for such a length of time as to suggest that his statements were involuntary. See *Eliason*, 300 Mich App at 307 (the length of the juvenile's detention supported the conclusion that the juvenile's statements were voluntarily made when the juvenile was detained for approximately two hours between his arrest and subsequent confession). The interview lasted 41 minutes, and demonstrates that respondent was not subjected to repeated or prolonged questioning during the interview. Further, respondent confirmed at the beginning of the interview that he was not under the influence of drugs or alcohol, and he did not appear to be injured, in ill health, physically abused, or deprived of food, sleep, or medical attention.

Respondent argues that the trial court failed to consider his age, level of education, experience with police, the fact that the interview was conducted early in the morning, the absence of a parent during the interview, and law enforcement's failure to comply with MCL 764.27 in finding respondent's statements were voluntary. It is true that a trial court determining the admissibility of a juvenile's confession must consider the juvenile's age, level of education, prior experience with the police, the degree of police compliance with MCL 764.27, and the presence of a parent during the interview. *Givans*, 227 Mich App at 121. But respondent presents no authority holding that a trial court making a voluntariness determination must make explicit findings as to each factor, and we have not located any authority so holding. The record demonstrates that the trial court was, at the very least, aware of respondent's age, level of education, experience with police, the absence of respondent's parent during the interview, and the time that the interview was conducted, because all of this information could be gleaned from reviewing the video of respondent's police interview, which the trial court reviewed before making its decision on respondent's motion to suppress and for a *Walker* hearing.

Moreover, respondent argues that his age, level of education, and lack of prior experience with police suggest that his statements were not voluntarily made, but does not articulate how these factors suggest a finding of involuntariness. Respondent was 17 years old and a high school senior at the time of the interview. Respondent appeared to understand everything said to him during the interview, including his *Miranda* rights. He acknowledged during the interview that he could have said he wanted to contact a lawyer or invoked his right to remain silent, but he did not want to do that. There is no evidence regarding respondent's age, level of education, or prior police experience that supports a finding that his statements were involuntary. Further, although respondent argues that his professed motive for the carjacking, a desire to buy his mother a new furnace, demonstrates a low level of maturity, respondent does not articulate how respondent's motive demonstrates a low level of maturity. To the contrary, respondent's motive demonstrates a degree of maturity for a juvenile: respondent was motivated not by impulse, a desire to impress his peers, or for personal financial gain, but was motivated by a desire to assist his mother repair a home utility.

Respondent also argues that the absence of a parent during the interview supports a finding that his statement was not voluntarily made, but the absence of a parent is not dispositive of whether a juvenile's statement was voluntarily made. See *In re SLL*, 246 Mich App at 210 (the absence of the juvenile's mother while the juvenile was interviewed by police did not merit a finding that the respondent's statement was involuntary). Further, Officer Ruber testified that respondent did not request the presence of a parent or an attorney at any time before the interview began.

Respondent's argument that law enforcement's failure to comply with MCL 764.27 renders his statements involuntary similarly fails. MCL 764.27 provides that law enforcement must immediately take an arrested juvenile before the family division of the circuit court of the county where the offense is alleged to have been committed. Respondent was arrested on November 18, 2021, at approximately 10:08 p.m., and appeared for a preliminary hearing on November 19, 2021, at 1:50 p.m. Thus, respondent was not taken immediately before the family division of the circuit court upon his arrest. But a violation of MCL 764.27 alone is not dispositive of whether a juvenile's statements were voluntary. See *People v Hall*, 249 Mich App 262, 269; 643 NW2d 253 (2002) ("Although MCL 764.27 [was] violated, defendant was of reasonable intelligence and had sufficient experience with the police that these violations are not controlling.")

Considering the totality of the circumstances, respondent's statements during his police interview were voluntarily made. Officer Ruber advised respondent of his *Miranda* rights and respondent read, signed, and initialed a *Miranda* waiver before questioning began. Respondent appeared to understand everything said to him by police and communicated with police in an articulate and coherent manner. Respondent confirmed that he understood his *Miranda* rights by stating that he could have asked for a lawyer, but he did not want to, and by requesting to speak with his lawyer and the presence of his mother at the interview's conclusion. Respondent was not under the influence and did not appear ill, injured, physically abused, or deprived of food, sleep, or medical attention. Respondent was not detained for so long, or questioned in such a prolonged and repeated manner, as to render his statements involuntary. Law enforcement did not use threats, force, or coercion to elicit respondent's statements. Because the totality of the circumstances suggests that the statements were voluntarily made, the trial court did not err by so finding. The trial court, therefore, did not err by denying respondent's motion to suppress the inculpatory statements made during his police interview.

## C. REQUEST FOR *WALKER* HEARING

Respondent also argues that the trial court abused its discretion by denying respondent's motion for a *Walker* hearing. We disagree.

Our Supreme Court in *Walker* held that "when a defendant contends that statements that had been made were involuntary, the trial court must conduct a hearing outside the presence of the jury to determine the issue of voluntariness, at which the defendant may take the stand without waiving the right not to testify at trial." *People v Manning*, 243 Mich App 615, 624-625; 624 NW2d 746 (2000). Accordingly, "[d]enial of a pretrial motion for a *Walker* hearing constitutes error." *People v Littlejohn*, 197 Mich App 220, 222; 495 NW2d 171 (1992). But when a defendant moves for a *Walker* hearing at trial, the trial court may exercise its discretion in deciding whether

to hold a *Walker* hearing. *People v Soltis*, 104 Mich App 53, 55; 304 NW2d 811 (1981).[6] Whether a trial court abuses its discretion by denying a midtrial motion for a *Walker* hearing "may be tested by the existence of special circumstances justifying the delay." *Id*. at 55-56 (quotation marks and citation omitted). For example, the existence of special circumstances justifying the delay in moving for a *Walker* hearing has been found "where the factual circumstances constituting the illegality are not known prior to trial." *Id*. at 56 (quotation marks and citation omitted).

The trial court did not abuse its discretion by denying respondent's midtrial motion for a *Walker* hearing. The trial court acknowledged that it was within the court's discretion to conduct a *Walker* hearing but held that respondent had not demonstrated any special circumstances justifying the delay in requesting a *Walker* hearing. The trial court noted that it was scheduling trials several months out, and found that conducting a *Walker* hearing would use up the remainder of the time reserved on the docket for respondent's trial. Thus, the trial court found that conducting a *Walker* hearing midtrial would result in a several-month delay in the trial proceedings. Respondent did not argue in the trial court or on appeal the existence of special circumstances justifying the delay in requesting a *Walker* hearing, and we discern no such circumstances from the record. Because respondent has not demonstrated special circumstances justifying the delay, the trial court's denial of respondent's midtrial motion for a *Walker* hearing did not fall outside the range of reasonable and principled outcomes. The trial court, therefore, did not abuse its discretion by denying respondent's midtrial motion for a *Walker* hearing.

## III. SUFFICIENCY OF THE EVIDENCE

Respondent next argues that petitioner presented insufficient evidence to support his adjudications for carjacking, CCW, and felony-firearm. We disagree.

This Court reviews de novo challenges to the sufficiency of the evidence by viewing the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "But more importantly, '[t]he standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018), quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (alteration in original). The prosecution is required to prove the elements of the offense beyond a reasonable doubt, "in the face of whatever contradictory evidence the defendant may provide." *Nowack*, 462 Mich at 400 (quotation marks and citation omitted).

"[D]ue process requires the prosecution to prove every element beyond a reasonable doubt." *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021) (quotation marks and citation omitted; alteration in original). Respondent does not challenge any specific elements of carjacking, CCW, or felony-firearm on appeal; rather, respondent argues that there was insufficient

---

[6] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority." *People v Craig*, 342 Mich App 217, 226 n 3; 994 NW2d 792 (2022) (quotation marks and citation omitted).

evidence establishing his identity as one of the perpetrators of the carjacking. Identity is an essential element of every criminal offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks, citation, and alteration omitted). Thus, identity can be proven by either witness identification or by reasonable inferences arising from circumstantial evidence. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id.*

Petitioner presented sufficient evidence identifying respondent as a perpetrator of the carjacking to sustain respondent's carjacking adjudication. Woodeck testified that she saw a dark sedan pull up behind Bogden's Jeep before the two men approached the Jeep and ordered both women to exit the vehicle. Both Bogden and Woodeck testified that, after the two men stole Bogden's vehicle at gunpoint, they saw a dark sedan follow Bogden's Jeep out of the apartment complex parking lot. Officer Michaels then observed the stolen Jeep driving on Merriman Street three miles south of the apartment complex, and saw a dark sedan driving in tandem with the white Jeep. Officer Michaels observed the Jeep strike the black sedan, but neither vehicle pulled over after the accident; rather, the Jeep fled at a high rate of speed, and Officer Michaels pursued the Jeep until it crashed. While Officer Michaels pursued the Jeep, Officer Gosur surveilled the dark sedan. Officer Gosur saw the driver of the black sedan driving in a suspicious manner, including the driver's failure to stop after being struck by the Jeep, the driver's "hawking"[7] behavior, and the fact that the driver's route was essentially a large circle. Further, Officer Gosur saw the driver park the black sedan in a parking lot less than a mile from the location where the Jeep crashed and the Jeep's driver fled on foot. After the black sedan parked, Officer Gosur saw the driver exit the vehicle. At trial, Officer Gosur identified respondent as the driver who exited the sedan. Sergeant Lineberry also saw respondent walking away from the dark sedan. The victims' observations of the dark sedan following the stolen Jeep out of the parking lot, and law enforcement's subsequent observations of the Jeep and dark sedan driving in tandem and the suspicious driving behavior of the dark sedan, constitute circumstantial evidence from which a fact-finder could reasonably infer that respondent was one of the two perpetrators of the carjacking.

Additional evidence also supported respondent's identity as a perpetrator of the carjacking. Sergeant Lineberry testified that, when he detained respondent, respondent had a cell phone in his hands. Sergeant Lineberry picked up the cell phone and saw that it was open to a map application with a pin placed in the area where the Jeep crashed. Sergeant Lineberry asked respondent if he had a gun, and respondent replied that the gun was in the center console of the sedan. Respondent then stated, without further prompting, that the carjacking was "all his idea." Respondent was thereafter transported to the Livonia Police Department, where respondent was interviewed by Officer Ruber and Sergeant Thompson. During the interview, respondent admitted that he and his corespondent were driving in the sedan when respondent saw the victims walking across the parking lot toward the Jeep. Respondent thought the Jeep had monetary value and decided to steal the Jeep so that he could sell it to help his mother repair her broken furnace. Respondent told

---

[7] The term "hawking" refers to a constant side-to-side motion of the head, as if the head is on a swivel, indicating that the subject is looking for police or someone the subject is trying to pick up.

police that he exited the Malibu wearing a mask, approached the passenger side of the Jeep, and told the passenger to exit the vehicle. Though respondent initially denied having a gun on his person when he approached the Jeep, respondent ultimately admitted that he had a gun and pointed the gun at the passenger when he ordered her to exit the Jeep. Because respondent's inculpatory statements were voluntarily made and the trial court did not err in admitting these statements, respondent's own admissions constitute sufficient evidence to establish his identity as one of the perpetrators of the carjacking. Petitioner, therefore, presented sufficient evidence to establish respondent's identity as a perpetrator of the carjacking.

Petitioner also presented sufficient evidence to support his adjudication of CCW. To sustain an adjudication for CCW in a vehicle, petitioner was required to prove "(1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was 'carrying' it." *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999). When a defendant exercises exclusive control over a vehicle and knows that a firearm is concealed in the console of the vehicle, there is sufficient evidence to prove the knowledge and carrying elements of CCW. *People v Courier*, 122 Mich App 88, 91; 332 NW2d 421 (1982). Respondent was the sole occupant observed in the Malibu. When respondent was arrested, he admitted that there was a gun in the center console of the Malibu from which he had just exited. During his police interview, respondent initially denied pointing the gun at Woodeck, but did not deny that he had a gun in the center console of his vehicle, and he ultimately admitted that he did, in fact, point the gun at Woodeck during the carjacking. This evidence was sufficient to establish the presence of a weapon in the vehicle operated by respondent, that respondent knew of the presence of the weapon, and that respondent was carrying the weapon because he admitted that he pointed the firearm at Woodeck and he had exclusive control over the vehicle. Thus, petitioner presented sufficient evidence to sustain respondent's CCW adjudication.

Lastly, petitioner presented sufficient evidence to support respondent's adjudication of felony-firearm. To prove the offense of felony-firearm, petitioner was required to prove that respondent possessed a firearm during the commission of, or the attempt to commit, a felony. *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016). Though Woodeck did not see the gun, she testified that she felt one of the perpetrators press a gun to her chest, and respondent ultimately admitted that he pointed a gun at Woodeck and ordered her out of the Jeep. He also admitted that his intention was to steal and sell the Jeep. Thus, petitioner presented sufficient evidence from which a fact-finder could conclude that respondent possessed a firearm during the commission of a carjacking—a felony. Petitioner, therefore, presented sufficient evidence to sustain respondent's felony-firearm adjudication.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Brock A. Swartzle

-11-